# DECISIONS

OF THE

# Supreme Court of Florida,

## AT TERMS HELD IN 1861.

MARY J. OWENS, APPELLANT, VS. SAMUEL B. LOVE AND JAMES BRUCE, ADMINISTRATORS OF WILLIAM FORBES, DECEASED, APPELLEES.

1. In this State, all decrees in Chancery, whether Interlocutory or Final, are not only by the practice of our Courts, but by Statutory provision, deemed to be enrolled when entered upon the minutes of the Court.

2. A decree directing a reference to a master for the purpose of ascertaining any material fact in the case, is not a *final decree*, although it ascertains and determines all the equities of the case.

3. A Bill of Review lies only after final decree, and not upon an Interlocutory Decree. A Bill in nature of Bill of review, is not of use in this State, as all decrees are enrolled when entered upon the minutes of the Court.

4. After an *Interlocutory Decree is enrolled*, the Court will grant leave to file a Supplemental Bill, to bring forward newly discovered evidence, and grant a rehearing upon the same if the evidence is of such a nature, as were it a Bill of Review, would entitle the party to relief.

5. To entitle the party to relief in such cases, the newly discovered evidence must be *relevant* and material, and such as might *probably* have produced a different determination. The new matter must have first come to the knowledge of the party after the decree. The matter must not only be new, but it must be such, as the party by the use of *reasonable diligence*, could not have known; it must not be merely *cumulative*, nor merely corroborative or *auxillary* to what is already in the case, but must establish *a new fact of itself*, decisive of the merits of the cause.

6. With Administrators who are strangers to the transaction, and who have to look after evidence to defend the Estate, the same stringency in ruling as to *knowledge* of facts, ought not be exercised.

7. On application for leave to file a Supplement Bill, and for a re-hearing, the Appellate Court can only consider the *prior* Interlocutory Decree, so far as to ascertain and enquire whether the new matter sought to be introduced is relevant and material, and such as had the same been before the Chancellor, might probably have produced a different determination.

This case was decided at Tallahassee.

The facts of the case are fully set forth in the opinion of the Court.

*Papy & Archer*, for Appellant.

*R. B. Hilton, Samuel B. Stephens* and *G. K. Walker*, for Appellees.

DUPONT, C. J., being disqualified to sit in this cause, having been of Counsel in the same, Hon. J. J. Finley, Judge of the Western Circuit, sat in his stead.

FORWARD, J., delivered the opinion of the Court.

This is an appeal (authorized by the statute of 7th January, 1853) from an Interlocutory order of the Court below, granting leave to file a Supplemental Bill to bring forward newly discovered evidence, and for a rehearing of the cause upon the newly discovered testimony, when Supplemental Bill shall be ready to be heard. The petition for rehearing, &c., sets forth in substance, as follows: That since the decree rendered on the 4th January, A. D., 1858, in this cause, authorizing the said Mary Jane Owens, to redeem the negroes in controversy, and directing an account to be taken, very important and material evidence, both of record and oral, has been discovered, which was unknown to the petitioners at the time of making said decree, "*and which has not come to their knowledge until within the last four weeks, although your petitioners were diligent in their researches, and used every means in their power to procure all the testimony relating to the defense of said suit.*" That said de-

cree was based on the finding of the following facts in evidence, to wit : That the title of said Forbes to said negroes in said decree mentioned, was taken and held by said Forbes, only as a security for money advanced to said Mary J. Owens, to enable her to quiet her title to said negroe slaves, by paying off the demand of William Teat, jr., who refused to surrender them to said Mary J. Owens, until his demand was satisfied. That said Forbes, in his life time, shortly after redeeming said slaves from said Teat, and carrying them to be placed in the possession of said Mary J. Owens, by virtue of his title which he held merely as a security for the money advanced for the purpose aforesaid, *dispossessed* the said Mary J. Owens of said slaves, and restored them to the custody of said Teat, from whom he (Forbes) had recently redeemed them. That said Teat was the Agent of said Forbes, and that said Forbes was responsible for his acts.— That said Teat was unworthy of trust or confidence, of which fact the said Forbes was fully apprised, and that by his carelessness and neglect said slaves were squandered by said Teat, and finally lost to complainant. The petitioners set forth in their petition that they have recently *discovered evidence* by which they are informed, and believe they will be able to prove that shortly after the said supposed marriage of said Mary with Mr. Owens, who finally abandoned her and went in 1840, to live with his lawful wife in South Carolina, she, the said Mary J. Owens, became distrustful of said Owens, and believing that his object in marrying her was to get possession of said slaves and make way with them. That under the apprehension of immediate danger from this direction, *Mary J. Owens sent for said William Teat, jr., and placed said slaves in his possession without the knowledge or consent of said Forbes*, and that said Teat so far from being the Agent of their intestate in taking possession of said slaves, *was the Agent of Mrs. Owens.* The

petition further sets forth that immediately after the slaves were thus put in the possession of said William Teat, jr., they were claimed by the Administrator of William Teat, senior, who proceeded through the Courts of Alabama to assert his right thereto, as the property of the Estate of William Teat, senior. And that by virtue of an attachment issueing out of the Court of Chancery, subsequently, under a Bill of Complaint filed therein, he actually seized said slaves, and that under the provisions of said writ they were restored to the *possession of the said William Teat, jr.*, on his giving a bond and security to hold them subject to the result of the suit. That said suit appears from the record never to have been tried, but was dismissed for the want of prosecution in July, 1839. That although your petitioners were aware that the representative of William Teat, senior, had claimed said slaves as the property of said Estate, and that there had been some litigation in the *Courts of law*, in reference thereto, yet, they were not, until recently, apprised of the fact of the seizing of said slaves by the *Court of Chancery*, and their consequent detention to await the result of said suit ; nor had they any knowledge of the existence of said suit or of any of the proceedings had therein. That in about six months after the dismissal of said suit, said William Forbes sent a special Agent to Alabama, to demand, recover and receive said slaves, and that the petitioner, James Bruce, has now in his possession the original power of Attorney, given to said Agent ; but not being aware of the existence of said Chancery suit, of the seizing and detention of said slaves by virtue of the proceedings thereon, or of the time of the dismissal thereof, he was not apprised of the important bearing of this fact of sending said Agent in relieving his intestate (Forbes) of the charge of *negligence* in relation to the recovery of said slaves ; and, therefore, this fact does not appear in the evidence, although

known to said Bruce before the rendition of said decree.— The petition further sets forth that having no personal knowledge of the early facts connected with this case, they (the petitioners) employed Boling Baker, Esq., one of the Counsellors in this cause, to proceed to Wilcox county, Alabama, where the facts mostly transpired, and procured all the testimony that could be had in reference thereto. The said Baker proceeded to make said examination, but that many years had elapsed since the occurrence took place; and said Baker succeeded in making out very little, if any, oral testimony; and although he instituted an examination into the records of said County, he failed to discover and report to said petitioners, the proceedings in Chancery under which said slaves were seized and detained as before mentioned, owing, as your petitioners infer, to the fact, as they are informed, that the Chancery records of said County of Wilcox, had been transferred to Cataba, a town in another County in said State. The petitioners pray that the decree be set aside and vacated; that they be permitted to file a Supplemental Bill, take further testimony, and that a rehearing be granted and such further order taken as may be necessary to reach the Equity of this case. The petitioners make affidavit in support of their petition.

As a matter of practice in similar cases, and in order that the form and statements contained in this petition may not be followed as a precedent, the Court will take occasion to say that the new matters discovered, the diligence exercised in searching the records in Alabama, and the statement of other facts, are not made with that clearness and fulness, and authenticated by exemplifications of the records newly discovered, and statement under oath of person employed to make research, as are necessary to readily put the Court in the possession of matter whereupon license may be given to file Supplemental

Bill to bring forward the new evidence and to grant a re-hearing when produced. Under the facts, however, as they are stated, the Chancellor in the Court below was asked to grant leave to the filing of a Supplemental Bill, and to grant a rehearing; and upon a hearing thereof, the Chancellor "*ordered* that the defendants be at liberty to file a Supplemental Bill, to bring before the Court the matters stated in said petition relative to the new matters discovered since the making of the Interlocutory Decree in this cause, on the 4th of January, 1858, and for relief as they should be advised; and further, that they be at liberty to have the original cause brought on to be reheard, and to come on at the same time with the cause upon said Bill."— From this order appeal is taken to this Court.

On the part of the Appellee it is contended that the decree of 1858, is a *final* decree enrolled, and that a Bill of Review in the nature of a Bill of Review, was the only remedy, if there was any, in this cause; and that, therefore, the Court below erred in granting leave to file a Supplemental Bill. This brings us to determine whether said decree was Final or Interlocutory. The decree is in the following words: "This cause came on to be heard upon a Bill, answer, exhibits and proofs, and upon argument of Counsel; and the Court having considered the matters in issue, it is ordered, adjudged and decreed, that the complainant is entitled to redeem from the possession of defendants, as Administrators of William Forbes, the slaves Peg, George, Melinda, Dolly, Harriet, Easter, Eliza and Maria, and their increase since the month of November, A. D., 1835, upon the payment of the sums advanced thereon by William Forbes, in his life time, and interest theron, and is entitled to recover the hires of said slaves to the present time from the time the same went into the possession of the said William Forbes, or his Agent, William Teat, which date may be estimated in taking the

account, as the 1st day of May, A. D., 1836; and if the said slaves cannot be found in possession of defendant's Administrators as aforesaid, or cannot be procured by them, the complainant is entitled to recover in lieu of said slaves, the value thereof to be ascertained. And it is further ordered that an account be taken against the Estate of the said William Forbes, of the hires of said slaves and their increase since the same went into the possession of said William Forbes, or his Agent, William Teat, to be considered as the 1st day of May, A. D., 1836, together with interest on said annual hires, and that an account be also taken of all the moneys, provisions, supplies and other articles of value advanced by the said William Forbes, in his life time, to complainant, with interest thereon, and that said accounts be made up to the date of said report to be made, and a balance struck between the two accounts, and that an account be taken of the value of said slaves and their increase at this time and at the first day of May, 1836, and at the latest date the same can be traced, and it is referred to Robert C. Lester, master, to take and state said accounts, with leave to the parties to offer evidence thereon before the master, and the evidence when taken, the master shall preserve in writing and report with his report hereon; and all other matters are reserved until the coming in of said Report."

This Court in the case of Griffin, Administrator, vs. Orman, decided at the Term held in 1860, (see —— Fla., page 47) defined what constitutes a Final, and what an Interlocutory Decree. It was held in that case that " a decree directing a reference to a master for the purpose of ascertaining *any material fact* in the case, is not a *Final Decree*, but an Interlocutory one." We see no reason for reviewing and reversing our decision in this particular, and hold the definitions as laid down in that case to be correct. Upon examination of the above decree, claimed to be a final decree, it

will be seen that it refers this cause to the master to ascertain several facts.

First : To ascertain the *increase* of said slaves since the month of November, A. D., 1835.

Secondly : To ascertain the sums advanced thereon by William Forbes in his life time, and interest thereon.

Thirdly : The hires of said slaves from the first day of May, 1836.

Fourthly : If said slaves cannot be found in the possession of the Administrators of said Forbes' Estate, or cannot be procured by them, then to ascertain the value of them.— The master was also to enquire and report, whether said slaves could or could not be found in possession of said Administrators, and whether they could be procured by them.

Fifthly : To ascertain all the moneys, provisions, supplies and other articles of value advanced by the said William Forbes, in his life time.

Sixthly : To ascertain the value of said slaves and their increase at that time, and at the latest dates the same can be traced.

Seventhly : The master is directed to *preserve* the *evidence* taken before him, and to report it.

Lastly : *All other matters are reserved until the coming in of said Report.*

Here are several material facts in the case, which, when ascertained, are to be reported to the Court with the evidence. Matters are also reserved until the coming in of the report. This report may be excepted to, disproved and overruled, or confirmed and made absolute by order of the Court. Thisbeing the case, it follows, there must be a final decree upon it. The decree we have under consideration, although it ascertains and determines all the other equities of the case, leaves unsettled the equities relating to the matters referred, as to which material facts are

sought, and reserves questions. That something further was left to be done appears evident, as the Chancellor directs a report. We are of opinion the decree in question was an Interlocutory Decree. Having considered this an Interlocutory Decree, the next question is, whether the remedy, if there was any in this case, was by asking leave to file a Supplemental Bill and a rehearing on the evidence thus brought forward. Had the application in this petition been but for a review reversal, and setting aside said decree, then the case of Putnam vs. Lewis, and wife would be applicable, which decided that a Supplemental Bill in the nature of a Bill of Review, would seem to be the appropriate remedy. See also Scott vs. Blain, 1 Baldwin, 287. But the petition seeks something more—a rehearing is sought on the ground of newly discovered evidence, discovered after the Interlocutory Decree. The rule is that the Court will grant such a rehearing upon the filing of a Supplemental Bill after an Interlocutory Decree enrolled, if the evidence is of such a nature as to entitle the party to relief upon a Bill of Review or Supplemental Bill in the nature of a Bill of Review, after a Final Decree, but not otherwise.—Baker *et ux.* vs. Whiting *et al.*, 1 Story's Rep., 233.

This doctrine was also fully recognized by Mr. Chancellor Kent, in Wiser vs. Blachley, 2 John. Ch. Rep., 124; and Livingston vs. Hubbs, 3 John. Ch. Rep., 124; and in Dexter vs. Arnold, 5 Mason Rep., 303. In the case of Jenkins vs. Eldridge, 3 Story's Rep., 307, Judge Story says: "The real question, therefore, for the consideration of the Court is, whether leave should be granted to file a Supplemental Bill to bring forward the new evidence. In substance, there is no difference between this case and the case of leave to file a Bill of Review or a Bill in the nature of a Bill of Review, except that the latter is solely applicable to cases

334        SUPREME COURT.

Mary J. Owens vs. Adm'rs of Wm. Forbes, dec'd.—Opinion of Court.

where there has been a *Final Decree*, whereas applications like the present may be before or after an Interlocutory Decree. But the doctrine of the Court as to the nature of the evidence which will justify and support the application, is in such case governed by the same considerations and limited by the same rules. The questions, then, properly for inquiry are, whether if the decree in this case was a *Final Decree*, the appellees under their petition, and the facts therein set forth, would be entitled to relief upon a Bill of Review or a Supplemental Bill in the nature of a Bill of Review. To determine this we are to enquire what are the rules governing Courts granting leave to file a Bill of Review? In Story's Commentaries on Equity Pleadings, Sec. 412, they are laid down in substance, as follows: 1st. Leave to grant it will not be granted without an affidavit that the new matter could not be produced or used by the party claiming the benefit of it in the original cause. 2nd. The affidavit must also state the nature of the new matter, in order that the Court may exercise its judgment upon its relevancy and materiality. In Dexter vs. Arnold, 5 Mason's Rep., pp. 310, Story, Justice, says: The ordinance of Lord Bacon constitutes the foundation of the system, and has never been departed from. The ordinance is there inserted, and will be seen upon reference to that case. It is now the established exposition of the ordinance, that the new matter shall not have been discovered until after publication has passed.— And as in our Courts all decrees, whether Interloqutory or Final, are not only by the practice of our Courts, but by statute provision, deemed to be enrolled as of the day on which it is entered on the minutes of the Court, a Bill in nature of a Bill of Review, is not appropriate, and therefore out of use. In the first place, the new matter must be relevant and material, and such as *might probably have produced a different determination.* In other words, it must

generally be new matter to prove what was before in issue, and not to prove a title not before in issue; not to make a new case, but to establish the old one. In the next place, the new matter must have first come to the knowledge of the party after publication has passed. And in the next place, the matter must not only be new, but it must be such as the party, by the use of *reasonable diligence*, could not have known, for if there be any laches or negligence in this respect that destroys the title to the relief, 2 Smith's Ch. P. page 58 (marginal page.) The party must show that the new matter is relevant or that there is probable cause that it may be relevant to the matters in question. On this application for leave to file Supplemental Bill, and for a rehearing, this Court can only consider the prior Interlocutory Decree, so far as to ascertain and enquire whether the new matter sought to be introduced is relevant and material, and such as had the same then been before the Chancellor, might probably have produced a different determination. In determining this, although the cause is not before this Court on its merits, yet it becomes necessary for the Court to ascertain and fix the title held by Forbes, in order to a just appreciation of the Appellee's new proof. The petition for leave to file Supplemental Bill, sets forth what the petitioners are informed and believe was the title ascertained by the Court. The decree grants the right of the said Mary J. Owens *to redeem* said slaves upon payment of moneys, &c., advanced, and from which we draw the inference that the Court below considered the said Forbes a mortgagee in possession, and guilty of laches and negligence, whereby the slaves became lost to both mortgagor and mortgagee, and the Estate of Forbes consequently liable. The original Bill of Complaint alleges that one William Teat, senior, departed this life in the spring of 1835, and by last will and testament bequeathed these negroes to the said Mary Jane Owens, who was his

widow, to be enjoyed by her at her will and pleasure through life, and there to descend to her children, the heirs of his body. The Bill further alleges that previous to the death of William Teat, senior, and before his removal to Alabama, and while he was domiciled in the State of South Carolina, he, the said William Teat, senior, made to his son William Teat, junior, a bill of sale of said negroes; that the said William Teat, senior, remained in possession of them, and was in possession of them at his death. That during the life time of William Teat, senior, a dispute arose between him and his son, respecting, the bill of sale held by said William Teat, junior, which his father denounced as a fraud upon him, and required his Executor to contest the same; that these circumstances are alluded to and spoken of in the will of said William Teat, senior. The said Mary J. Owens claims in said bill of complainant, that the said slaves and their increase, passed to her under the will of said William Teat, senior, unless the title thereto was absolute in said William Teat, junior.

Upon a careful examination of the testimony and exhibits, it would seem clear that Mrs. Owens was mistaken in her bill of complaint, wherein she sets forth that William Teat, jundior, held a bill of sale of said slaves from William Teat, senior. The evidence established, as the Court below seems to have considered, that William Teat, junior, derived his claim on said negroes, by virtue of an incumbrance thereon, in favor of one Dannelly; that Dannelly executed to him whatever title he had, and it would seem that the Court below considered the claim of William Teat, junior, that of a mortgagee. Whether as such he was in or out of the possession of the slaves, does not seem to have been considered. The said William Teat, junior, however, transfers all his title to the said William Forbes, in his life, who executes an agreement to Mrs. Mary J. Owens, by which

l.e, the said "William Forbes, obligated himself to deliver to the said Mary J. Owens a certain number of negroes on her paying to him, the said Forbes, the sum of eight hundred and some odd dollars, with interest."

From this history of title, it would seem, that Forbes was only the holder of such title as he derived from William Teat, junior, with the addition of an equitable lien upon the same, created by Mrs. Owens to him, under and by virtue of his transactions with her. It appears that the Court below, under the testimony, considered the said William Forbes in the light of a mortgagee in possession. If, therefore, the said William Forbes was liable for the loss of the slaves and for their hires, it was upon the ground that he was a mortgagee in possession of the same. From this view of his title, it would seem that the material issue was, whether said Forbes was or not in possession of said slaves, and whether they were lost to the mortgagor. Mrs. Owens, being a legatee under the will of William Teat, senior, together with her agreement with the said Forbes, might file a bill to redeem. The Administrator of William Teat, senior, with the will annexed, might also have filed a bill to redeem, and would probably have had the prior right, unless he assented to her legacy. This, then, being the issue at the time the decree was made, it would seem, that the new matter which goes to deny the possession and refute the charge of laches, is relevant and material, such as if known might probably have produced a different determination. The Counsellor for the appellant objects to the newly discovered evidence, and insists that it is merely *cumulative*, and, therefore, ought not to be admitted. The cases of Baker vs. Whiting, 1 Story, and Jenkins vs. Eldridge, 3 Story Rep., 310, are relied upon as decisive of this point.— Upon looking into the latter case, the Judge, in commenting upon the evidence offered in that case, which he considered

338　　　　　　SUPREME COURT.

Mary J. Owens vs. Adm'rs of Wm. Forbes, dec'd.—Opinion of Court.

as auxiliary or corroborative, says *it establishes no new fact of itself decisive of the merits of the cause*, and necessarily changing the original decree, but is merely corroborative or *auxiliary* to what is now in the cause. This case fully establishes what we think is the case now under consideration, viz : That if the evidence sought to be introduced establishes *a new fact of itself*, decisive of the merits of the cause, and necessarily changing the original decree, the rehearing would be granted, and there is nothing to the contrary in Baker vs. Whiting.

Now, what do the petitioners seek to prove? They say they expect to prove that the slaves were placed in the possession of Teat, junior, by Mrs. Owens, without the knowledge of Forbes ; that William Teat, junior, was her agent, thus making her a *mortgagor* in *possession*. They also expect to prove that the Administrator of the estate of William Teat, senior, by process in Chancery, seized upon these slaves and kept them under seizure, or held possession, he having a right to do so, unless he assented to the legacy, and in other words, they expect to refute the charge of laches, proving facts not known at the hearing, and about which no proof was offered. To prove that the mortgagor remained in possession, is not to prove what is auxiliary to or corroborative of any proof in the cause upon the hearing, but to prove a fact wholly and entirely new, and which changes the whole aspect of the case. The remaining question is whether the appellees had knowledge or could by *reasonable* inquiry and diligence, have acquired knowledge of the facts stated in the petition before the hearing of said cause, so that they might have availed themselves of it before the decree. If they had such knowledge, or could by reasonable inquiry and diligence have obtained it, then it is clear they are not entitled to the relief sought. It is difficult under the facts disclosed by the record to resist the

conclusion that the appellees were put upon their inquiry and the exercise of dilgence as to the agency of William Teat, junior, and the institution of suit by the Administrator of William Teat, senior, in Alabama ; and were it not for the fact that they did use diligence in ascertaining the suit at law, and there were two suits in different counties—one in a Court of Law, and the other in a Court of Chancery—and, therefore, they might even in the exercise of a "*reasonable inquiry* and *diligence*," they being Administrators, have been misled.

Had Mr. Forbes been alive and made this application, the exercise of greater diligence would have been required of him, as he would be presumed to know his defense.

It will be noticed that Forbes died in 1852 ; that Mrs. Owens, the complainant, removed to the State of Florida in 1840, and became the close neighbor of said Forbes ; that this mortgage of William Teat, junior, Forbes paid off, at the instance of Mrs. Owens, in 1835 ; that the transactions occurred in Alabama ; that no suit was ever brought against Forbes, in his life time ; but after his death the present bill is filed against his Administrators. The Administrators are strangers to the transaction, and have to look for evidence to defend the Estate. For all that appears in the record, the Agent (who was a practicing attorney of good standing and legal accumen,) sent to Alabama to search the records, was competent. His mission proved, so far as the case in Chancery is concerned, as fruitless. Reasonable diligence and inquiry might have been baffled by the fact that these suits were in different counties. The Appellees were put upon their inquiry in the county of Wilcox, and not in the town of Cahaba, in another county; therefore, as the Appellees are Administrators, the same stringency in ruling as to knowledge ought not to be exercised. We are, therefore, of the opinion, that under the peculiar circumstances of this

840   SUPREME COURT.

City of Apalachicola vs. the Apalachicola Land Company.—Statement of Case.

case, the reasonable diligence and inquiry within the rule was made, and as with this they did not obtain the evidence, but have discovered it since the Interlocutory Decree, the Chancellor in the Court below was correct in granting the leave to file the Supplemental Bill, and in granting the re-hearing when evidence was adduced. The order of the Court below is affirmed, each party to pay their own costs accrued in this appeal.