H. L. GIBBS, R. L. RUSSELL, HERMOS GRAY AND Z. K. WALDRON, *Appellants*, v. H. L. EWING, ET AL., *Appellees*.

Division A.

Opinion Filed July 14, 1927.

238

*Shepard & Wahl,* of Cocoa, Florida, for Appellants;

*David Peel,* of Melbourne, Florida, for Appellees.

BROWN, J.—This matter is before us on an appeal, and a motion to dismiss such appeal from an order made by the chancellor in the court below denying the motion of appellants to vacate and set aside a former order of the court ordering the sale of certain lands and a subsequent order confirming the sale of said lands and to cancel the deed to the purchaser at said sale. The order for the sale of the land was made on October 8, 1923, and the order of confirmation on November 5, 1923. The motion to vacate and set aside such orders was not made until April 16, 1926, about two and a half years after the making of the orders attached. The movants, appellants here, were and are residents of the State of Illinois.

It appears from the motion to vacate that in December, 1914, the Florida Citrus Groves Company, a corporation, conveyed to H. L. Ewing, Trustee, approximately four hundred and seventy (470) acres of land, which included fifty (50) acres of well developed citrus groves land upon which there had been set out a grapefruit grove. The balance of the land was practically wild and unimproved. Ewing as trustee was to hold the land in trust for the creditors of the Florida Citrus Groves Company. This deed did not set out the terms of the trust. Later, in the same month, the Florida Citrus Groves Company made another deed to H. L. Ewing, Trustee, to the fifty acres set out in grapefruit, setting forth the terms of the trust, which was for

the security of the holders of certain certificates issued and to be issued under the terms of said deed. The Florida Citrus Groves Company thereafter became indebted to Bills, Ewing and Nehf, private bankers, of which bank said H. L. Ewing, Trustee, was president. This firm by incorporation, afterward became the Melbourne State Bank.

In May, 1916, Ewing as Trustee and the Melbourne State Bank filed a bill against the Florida Citrus Groves Company and these appellants and others for the interpretation of Ewing's responsibilities as Trustee under the deed of December 5, 1914, and to declare the Melbourne State Bank a preferred creditor of the Florida Citrus Groves Company, and to settle priorities between creditors and preferred stock holders, and for the sale of the entire 470 acres. The bill alleged that the defendant corporation had agreed that the indebtedness to the Bank was a preferred claim and entitled to priority. The appellants employed as their solicitor Rufus M. Robbins, who associated with him Jones & Jones. They demurred to the bill. No action was taken on the demurrer. An amended bill was filed without notice in April, 1917. During the course of this litigation the fifty acres of grapefruit grove land was sold, but the four hundred and twenty acres of wild land was not included. Nothing further seems to have been done in this case after the sale of the fifty acres, and the isssues were never made up nor any testimony taken. After the suit had remained dormant for a long time, some six years, H. L. Ewing, on August 7, 1923, filed in said suit an application to sell the remaining four hundred and twenty acres of land, alleging that by reason of deterioration of improvements on the land, the accrued taxes for which the land had been sold, the costs and the "undisputed prior claims" would more than consume the value of the property, and "that the question in dispute would be matters of no concern." The motion was sworn to by Ewing

but no testimony appears to have been taken. The record shows an affidavit by Ethel F. Taylor, presumably stenographer for complainant's counsel, that notice of the hearing of said motion had been mailed to Jones & Jones at Orlando and to Rufus M. Robbins at West Palm Beach. Appellants alleged in their motion to vacate that Rufus M. Robbins notified solicitor for complainants that he was no longer in the case and could not accept service for appellants, and that Jones & Jones, who were associated with Robbins, never received any notice whatever. The application was granted, a master appointed, the land ordered sold in October, 1923, and the sale confirmed as above set forth. Nothing further seems to have been done in the case until the motion to set aside these orders and to cancel the master's deed, was filed as above stated in April, 1926, some two and a half years later. Appellants, Gibbs, Waldron, Gray and Russell, who filed the motion to vacate and set aside said order, were defendants in the original suit. They allege in their motion that the sale of this land was made without notice to them, and that it was not advertised for the length of time required by the order of the court, being advertised for twenty-six days instead of four weeks; that the land was sold for a grossly inadequate price ($500.00) to one M. W. Busey, who was acting as agent for H. L. Ewing and Melbourne State Bank; that in procuring said sale, Ewing had acted fraudulently, alleging in the application that the property was deteriorating in value, when as a matter of fact it was increasing in value; that the sale was made subject to certain outstanding tax deeds and sales purchased by Ewing and his associates and agents, so as to preclude anyone except the Melbourne State Bank or its agents from bidding upon the same, and was bought in by one M. W. Busey for $500.00, subject to said tax sales; that the land was worth at least $25,000.00 at that time;

that in purchasing Busey was acting for and allowing his name to be used for the use and benefit of the complainants, Ewing and the Bank; that if the sale had been honestly conducted, the property would have sold for a sum sufficient to pay appellants and all the other creditors of said corporation in full whereas the sale was fraudulently made by the Trustee in such a way as to profit him and his bank, who received large sums of money when said property was sold, at the expense of the other creditors for whom he was holding the property in trust; that the Bank was not in fact a preferred creditor; that Ewing as trustee was estopped from setting up himself or his Bank as a preferred creditor.

After the motion to vacate was filed, one Glenn Henley filed his motion to be allowed to intervene in the cause, for the purpose of resisting the motion to vacate, which he objected to as being insufficient on its face, and alleged that he had acquired the lands by a conveyance from M. W. Busey, the purchaser at the master's sale, and that he had been in possession of the lands since 1923, without any notice or knowledge of appellant's claims, and had constructed valuable and permanent improvements thereon to the extent of $6000.00 or more, and had entered into various contracts to sell and convey to divers persons parcels of said lands, which were valid and outstanding obligations; that at the date of the execution of the master's deed to Busey, the market value of the lands was about $3000.00, which was substantially the amount of the purchase price, $500.00, and the outstanding tax claims against the lands which Busey assumed, amounting to about $2500.00; that since his purchase of the lands they had greatly increased in value. The petition for intervention also alleged that the appellants here had actual knowledge and constructive notice of petitioner's acquirement of title from Busey, and prayed that certain judgment held by the

appellants be decreed to be subordinate to petitioner's right and title.

The court made an order allowing said Henley to intervene, and it is he who in this Court has filed the motion to dismiss this appeal.

One of the grounds of the motion is that M. W. Busey, the purchaser at the judicial sale above mentioned, was not made a party defendant to the motion to vacate in the court below, or on the appeal to this Court. The general rule is that the purchaser at a master's sale of real estate, to whom a deed has been executed, and the sale confirmed, is a necessary party to all preceedings instituted to set aside or vacate the order of confirmation, and is a necessary party to an appeal taken in such proceedings; and that where he has not been made such a party, or has not voluntarily appeared in the appellate court, the appeal will be dismissed when the attention of the court is directed thereto by timely suggestion. Gifford v. Plummer et al., 73 Fla. 1065, 75 So. Rep. 536; Macfarlane v. Macfarlane, 50 Fla. 570, 39 So. 995; Armour Fertilizer Co. v. Wade Insurance Co., 105 So. 819; Poal v. Thomas, 112 So. Rep. 6171, 35 Cyc. 109; 3 C. J. 1014, et seq.

Appellants seek to avoid this point upon the ground that their motion to vacate alleged that in purchasing the property Busey was acting for the use and benefit of Ewing and the Melbourne State Bank, and they argue in their brief that, therefore, he is not personally interested and his presence as a party entirely unnecessary. It is true that mere nominal parties who have no interests that can be affected by the judgment or appeal are neither necessary or proper parties. 3 C. J. 1017; Ray v. Trice, 48 Fla. 297, 37 So. 582; Guarantee Trust & Safe Deposit Co. v. Buddington, 23 Fla. 514, 2 So. 885; Hazen v. Stevens, 60 Fla. 460, 53 So. 716. But the motion to vacate did not negative any personal interest on the part of Busey. In

the absence of any allegation that he acted *solely* as the agent of the complainants, or that he acted for them and had no personal interest in the matter, taking the pleading most strongly against the pleader, we would not be warranted in holding the court below in error in ruling such motion to be insufficient. But it appears from the petition that Busey, having conveyed certain of the lands to Henley, is a party whose interests are affected by the motion to vacate, and also by this appeal. Although the motion to vacate be construed as alleging that he was acting as the agent of the complainants, it would appear from the allegations in Henley's petition for intervention, objecting on various grounds to appellants' motion, that the purchaser, Busey, is personally liable on his warranty of title in his deed to Henley and that under the authorities above cited he should have been made a party in the court below and also to this appeal. See also 3 C. J. 1014. The general rule is that the trial court will not be held in error for denying a motion where no proof was offered to support it. No evidence was submitted in proof of this motion, but it satisfactorily appears from the record that on the hearing the motion to vacate was considered by the court as to its sufficiency on its face in connection with the objections and allegations set up by Henley's petition, and the language of the court's order, that "the said motion and objections being argued by counsel for the respective parties, upon consideration said motion is overruled," indicates this. The court evidently did not deny the motion because of failure to introduce evidence to prove it. But in the absence of evidence, and the motion not expressly negativing any personal interest in Busey, the court could hardly be put in error for holding in effect that Busey was a necessary party, considering the motion in the light of the objections and allegations as to its insufficiency raised by Henley.

One of the grounds of the motion to dismiss is that by this appeal the appellants seek to attain indirectly that which they cannot attain directly, namely, to have reviewed here in decrees of the Circuit Court of Brevard County rendered in the year 1923, more than two years prior to the taking of said appeal, and long after the time for the taking of an appeal therefrom had expired. In the case of Fitzpatrick v. Turner, 14 Fla. 382, this Court held that after the period within which an appeal could be taken had elapsed, a party cannot regain his lost opportunity by appealing from an unfavorable decision on his motion to set aside a judgment for irregularity. (See also in this connection Forcheimer v. Tarble, 23 Fla. 99, 1 So. 695; Einstein v. Davidson, 35 Fla. 342, 17 So. 563, 34 C. J. 210.) The court in Fitzpatrick v. Turner said: "If he has mistaken his remedy it is too late for the court to afford relief. The reversal of the order of April 22, 1873, would operate simply to give the defendant all the advantage that he could possibly have derived from an appeal from the judgment within the time limited by the statute." This case was cited with approval in the case of Gasque v. Ball, 71 Fla. 257, 71 So. 329, wherein it was held that, "An appeal from an *order denying a petition for a rehearing,* where no appeal was taken from *the final decree* within the time prescribed by the statute for taking appeals in chancery, does not bring before the court for review the final decree, and where the order denying the petition for a rehearing cannot be considered without reviewing the final decree, in such a case the order will be affirmed." Petitions for rehearing must be filed within thirty days after final decree. Sections 3164, 3165, R. G. S. chancery rule 90. It was further said in that case, "After the time has elapsed in which a petition for a rehearing may be filed, the party's remedy against whom the decree has been rendered or who

desires a reversal or modification of the decree, is by bill of review or appeal;" Citing Prentiss v. Paisley, 25 Fla. 927, 7 So. 56.

In the cases above cited, Fitzpatrick v. Turner and Gasque v. Ball, the court was dealing with motions attacking in the one case a final judgment, and in the other a final decree. In fact, a bill of review lies only to a final decree. It is not the remedy for an attack upon an interlocutory decree. Owens v. Love, 9 Fla. 325; Florida Chancery Jurisprudence, 246; Whitehouse, Eq. Prac., 279. It was held in the present term, in the case of Hall v. Hall, that a bill of review, strictly speaking, should generally be filed within the period prescribed for the taking of an appeal, though a different rule might obtain as to an original bill in the nature of a bill of review, or an original bill to impeach a judgment or a decree for fraud, mistake, etc., which, (rather than motions) are the usual methods of attacking final decrees. See 21 C. J. 701, *et seq.*

Though the order for the sale of the lands, and the order confirming such sale, in this case, might be considered as in some respects final, the effect being to substitute the proceeds of the sale for the actual land itself in adjudicating the rights of the parties in reference to the subject-matter of the suit (see Cossett v. Mitchell Coal and Coke Company, 150 Fed. 32; Trustee I. I. Fund of Florida v. Greenough, 105 U. S. 527, 26 L. Ed. 1157), yet, strictly speaking, these orders were not final, but made for the apparent purpose of selling the subject-matter of the suit, which was supposed to be deteriorating in value, and to preserve the proceeds, in the place of the lands, in aid of administering justice between the parties as thereafter to be ascertained and established by the final decree, when rendered. 21 C. J. 642, 703, 33 C. J. 1061. It is doubtful, therefore, that a bill of review, even if filed in time, would have been

a proper method of attack, the orders or decrees not being strictly final. But it is also true that so far as these orders are concerned, they were subject under our statute to separate appeal at any time within the period of six months, as much so as if they had been final decrees. However, this does not put them on a parity with final decrees in other respects. Under our statutes and decisions, a party is not compelled, in order to obtain appellate review, to take an appeal from an objectionable interlocutory order, where the case goes on to a final decree, and he takes an appeal from such final decree. On such appeal from the final decree, errors may be assigned upon prior interlocutory orders and decrees, though not separately appealed from. Therefore, the analogy between the rule requiring bills of review attacking final decrees to be filed within six months and the contention that motions to modify or vacate interlocutory decrees should be filed within six months, is not complete or satisfactory.

As a general rule, interlocutory orders and decrees remain under the control of, and subject to modification or vacation by the chancellor, until final decree. Alabama Hotel Co. v. Mott Iron Works, 86 Fla. 608, 98 So. 825; 21 C. J. 703, *et seq.*; 34 C. J. 216; 33 C. J. 1061; 10 R. C. L. 562; 5 Encyc. Pldg. & Prac. 1041, 1042.

It would therefore, seem reasonable that, generally speaking, motions to vacate or modify prior interlocutory orders upon sufficient grounds might be made by a party to a chancery cause at any time before the final decree, regardless of the expiration of the term at which rendered, or of the six months period within which a separate appeal could have been taken (21 C. J. 705), excepting, perhaps, that as to such interlocutory orders and decrees as are in some respects final in their nature, such as orders providing for judicial sales of part or all of the subject-matter

of the suit made during the pendency of the cause, upon the basis of which the rights of innocent third parties have been created, the rules as to the grounds for the motion would be more strict, and would have to negative laches or neglect. 21 C. J. 711-715.

While no rigid rule seems to have been laid down by the authorities prescribing the time within which a motion to vacate an interlocutory order or decree of sale should be made, the authorities hold that such a motion must be made seasonably, and if it is unreasonably delayed, relief may be refused, or acquiescence in the sale presumed, unless no intervening rights have attached, or the motion to vacate is made by a purchaser upon grounds recognized as legally sufficient. 35 C. J. 109. As was said in Powder v. Cheeves, 90 Ala. 117, 7 So. 512, ''Reasonable diligence, as well as good faith should be rigorously exacted from parties seeking the disturbance of judicial sales, and the destruction of titles derived from them; and whether there has been reasonable diligence must depend upon the particular circumstances, whether they are such as may have induced action, or ought to have quickened vigilance and action. * * * There cannot be a time definitely settled within which parties must resort to a judicial proceeding for the purpose of vacating the sale. The proceeding is of an equitable nature, dependant upon equitable principles, and is not capable of being controlled by fixed, inflexible rules—there must not have been *laches* operating injuriously to others; and there must not have been such unexplained acquiescence for a considerable period, with full knowledge of all the facts, as would afford cogent evidence of a waiver and abandonment of the right, if it be not the equivalent of a positive act of confirmation or release.''

While mere inadequacy of price may not alone be suf-

ficient in itself to justify setting aside a judicial sale, if the inadequacy be so gross as to shock the conscience, it may afford cause for vacating the sale, especially when connected with, or shown to result from, mistake, accident, surprise, misconduct, fraud, or irregularity. Marsh v. Marsh, 72 Fla. 142, 72 So. 638; Lawyers Coop. Pub. Co., v. Bennett, 34 Fla. 320, 16 So. 185. See also in this connection Phillips v. Howell, 81 Fla. 380, 88 So. 126; Peoples Realty Co. v. Southern Colonization Co., 78 Fla. 628, 83 So. 527; Welborn v. Welborn, 47 Fla. 348, 36 So. 61.

Appellants cite the case of Stribling v. Hart, 20 Fla. 235. In that case, after a decree *pro confesso* had been taken, and a final decree rendered thereon, which had become absolute by reason of the expiration of the twenty day period allowed by the statute (3158, R. G. S.) for motion to open such decree, a motion was made a few days later to set aside the final decree and the order taking the bill as confessed, and for leave to answer the bill. This motion was granted by the court and the defendant given fifteen days in which to answer. This Court held that after the expiration of the twenty day period, such decree became as final and absolute as if it had been rendered in term time, and the term had expired. The question was whether such decree could be set aside upon motion made after the expiration of the twenty day period. While the Court held that the lower court was in error in setting aside the final decree, it was held that, where sufficient grounds existed, such a motion, for the setting aside of a final decree, might be made and form the basis for the relief prayed.

While we are here dealing with a motion made in a cause apparently *in fieri,* and before final decree, to set aside an interlocutory decree of sale, the principle laid down in the case cited, regarding the sufficiency of the

grounds of such a motion, are doubtless to some extent applicable to the motion here under consideration. 21 C. J. 705. While holding in the Stribling case that such a motion was the proper means by which the decree might be opened and a defense upon the merits let in, it was said by this Court that such final decree would not be exercised where the defendant had been guilty of neglect and failure to give attention to the process of the court. It was also held that, "without the existence of strong and unavoidable circumstances excusing such neglect and *laches,* the decree should not be opened. Such power should not be exercised upon a mere desire to let in a defense upon the merits. The facts established must show deceit, surprise or irregularity in obtaining the decree; that the defendant had acted *bona fide,* and with reasonable diligence, and has a meritorious defense, and the facts constituting such defense must distinctly and satisfactorily appear," etc. See also in this connection Gainesville v. Johnson, 59 Fla. 459, 51 So. 852; Roebuck v. Batten, 64 Fla. 424, 59 So. 942; Malone v. Meres, 109 So. 677, 683 and cases cited; Phillips v. Howell, 81 Fla. 380, 88 So. 126; Rice v. Cummings, 51 Fla. 535, 40 So. 889; Friedman v. Rehm, 43 Fla. 330, 31 So. 234; 21 C. J. 705-6.

The motion to vacate the order of sale and of confirmation complained of in this case appear to measure up to the requirements of this rule.

Appellees contend that appellants should have proceeded in the court below only by petition, rather than by motion. This point is not well taken. Appellants could have proceeded by petition, but motion in writing was also permissible. Marsh v. Marsh, *supra.* "There are no precise boundaries between motions and petitions. The latter merely amounted to motions in writing. Most things which may be moved for, may also be obtained on

petition, whether as a matter of course or upon notice.''
Whitehouse, Equity Practice, Sec. 205; 21 C. J. 705.
''The principal distinction between motions and petitions
lies in the fact that motions may sometimes, if not always,
be made orally, while a petition is always in writing. So
also motions can usually be made only by a party to the
record, while petitions may be presented by strangers.''
14 Encyc. Pldg. & Prac. 74, 75. It was at one time con-
sidered that a motion was only available in cases not ended;
that after final decrees, or judgment, some other method
would have to be resorted to. But the remedial scope and
use of motions has been very much enlarged under modern
practice. 14 Encyc. Pldg. & Prac., 75, 76; 15 R. C. L. 716.

While a motion was a proper method of obtaining the
vacation of the orders of sale and confirmation, the length
of time which had elapsed before such motion was filed
was such as to require a very strong showing in order to
overcome the presumption of *laches* and neglect arising
therefrom. We are of the opinion, however, that the facts
alleged in the motion are sufficient in this respect. At the
time the petition was filed for an order for the sale of this
land, in October, 1923, it is alleged that nothing had been
done in the case for about six years. Rule 1 of Chancery
Practice required the court to dismiss this case after the
lapse of three years, ''unless otherwise directed for good
cause shown.'' These defendants, appellants here, there-
fore had cause after six years to believe that the suit had
been abandoned or dismissed. They were non-residents.
They alleged that they acted with due promptness and dili-
gence as soon as they learned of the action of the court in
ordering the sale of the lands back in 1923, by filing the
said motion to vacate in April, 1926.

Our conclusion is that the only ground of the motion
to dismiss this appeal which is well founded is the failure

of the appellants to make the purchase at the sale, sought to be vacated in the court below, a party as hereinabove pointed out, but this requires the dismissal of the appeal, with leave to the movants to amend their motion in the court below so as to conform to the principles laid down in this opinion.

Appeal Dismissed.

ELLIS, C. J., AND STRUM, J., concur.

WHITFIELD, P. J., AND TERRELL AND BUFORD, J. J., concur in the opinion.