411 So.2d 249 (1982)
Nury AGUDO, Appellant,
v.
Marcelo AGUDO, Appellee.
No. 81-2703.
District Court of Appeal of Florida, Third District.
March 2, 1982.
Rehearing Denied April 5, 1982.
*250 Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik and Ted H. Bartelstone, Miami, for appellant and Paul A. Louis.
Christie & Christie and Joyce E. Christie, Miami, for appellee.
Before HUBBART, C.J., and HENDRY and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The wife appeals from an order changing the temporary "residence" of the parties' then seventeen-month-old daughter to the husband. We stayed enforcement of this order pending the outcome of this appeal. We now reverse the order.
Nury Agudo filed her petition for dissolution of marriage in January 1981. She remained with her husband and the child in the marital home until October 1981, when, after efforts to reconcile failed, she moved out with the child to live with Mrs. Agudo's parents. On October 15, 1981, the trial court entered an order finding Nury to be a fit and proper person to have the "care, custody and control of the minor child of the parties,"[1] and adjudging that the child should "temporarily reside" with her with liberal rights of visitation granted to the father. This decision was predicated on the extensive expert testimony that it is a well-accepted and uncontroverted proposition that a child between the age of six months and three years establishes an attachment, or bonding, to a primary caretaker; that this bonding is essential to the wholesome emotional development of the child; that to deprive a child of the primary caretaker during this period has a destructive effect on the child's intellectual, physical and psycho-social development[2]; that Nury Agudo's role vis-a-vis the child was in fact that of the primary caretaker; and that this role could only be assumed by Mr. Agudo were he to give up his work as an attorney.[3]
*251 A month and a half later, a dispute concerning Mr. Agudo's visitation rights arose when the child became ill. Nury believed that Mr. Agudo should alter the scheduled visitation time because of this minor illness; in Mr. Agudo's view, the illness required no change in his intended visitation. On the heels of this dispute, Mr. Agudo filed a pleading entitled "Motion to Hold Petitioner/Wife, Nury Agudo, in Contempt of Court and Motion for Temporary Change of Residence of Minor Child."[4] The hearing on the motion focused on the visitation dispute. With regard to the proposal to change the child's "residence," Mr. Agudo merely repeated his concern that the child was living in a home with a swimming pool and near a canal,[5] and stated he would care for the child by making arrangements for a babysitter with whom he would be in contact with a beeper.
We first dispose of Mr. Agudo's threshold assertion that since the order appealed only changed the "residence" of the child, it did not determine a right to "custody," and is not reviewable under Florida Rule of Appellate Procedure 9.130(a)(3)(C) (iii). It is the effect of the change, not the name given it, that determines what it is, see Kelley v. Kelley, 56 So.2d 439 (Fla. 1952); Scott v. Scott, 401 So.2d 879 (Fla. 3d DCA 1981); Jacobs v. Ross, 304 So.2d 542 (Fla. 3d DCA 1974), and we hold that the order under review is one which determines custody.
We turn now to the wife's contention that the evidence presented by the husband did not demonstrate a substantial and material change in circumstances to support a change of custody. Most assuredly, the wife is correct in this contention if, indeed, it was the husband's burden to make that demonstration.
The October order which gave custody of the child to the wife was an interlocutory order. The seminal Florida case addressing the power of the court to change or modify interlocutory judgments (and, indistinguishably, orders) is Alabama Hotel Co. v. J.L. Mott Iron Works, 86 Fla. 608, 98 So. 825 (1924). There the court stated the rule to be:
"It is ... well settled that interlocutory judgments or decrees made in the progress of a cause are always under the control of the court until final disposition of the suit, and they may be modified or rescinded upon sufficient grounds shown at any time before final judgment, should it be after the term in which made." 98 So. at 826 (emphasis supplied).
This right to modify an interlocutory order upon a showing of "sufficient grounds" was qualified several years later in Gibbs v. Ewing, 94 Fla. 236, 113 So. 730 (1927), where the court stated:
"As a general rule, interlocutory orders and decrees remain under the control of and subject to modification, vacation by, the chancellor, until final decree. Alabama Hotel Co. v. Mott Iron Works, [supra]; [other citations omitted].
"It would therefore seem reasonable that generally, motions to vacate or modify prior interlocutory orders might be made ... at any time before final decree ... excepting perhaps, that as to such orders *252 and decrees as are in some respects final in their nature, ... upon the basis of which the rights of innocent third parties have been created,[6] the rules as to grounds for the motion would be more strict, ..." 113 So. at 734 (emphasis supplied).
Thus, while the husband was not required to show a substantial and material change in circumstances since the entry of the first custody order,[7] he was, under Alabama Hotel Co., required to show sufficient grounds for the change, and, because a right in an innocent third party (the child) was created by the initial order, required to make an even more compelling showing under Gibbs. But there is not the slightest evidence in the record before us to show that changing the custody of the child to the father would promote the welfare of the child or be in her best interests. Even in the case of an older child, but one of tender years, we have held:
"Certainly the best interests of the child are not served by a succession of temporary custody orders. In effect such a procedure of divided custody is one that has been held to be undesirable for the child."[8]Unger v. Unger, 306 So.2d 540, 541 (Fla. 3d DCA 1975).
See also Scott v. Scott, supra; Bienvenu v. Bienvenu, 380 So.2d 1164 (Fla. 3d DCA 1980). A fortiori, where the unrebutted testimony (which led to placing the child in the custody of the mother in the first instance and stood unrebutted when the change was made) is that the very change ordered by the court would have a deleterious effect upon a child in the bonding stage of development, the order cannot be permitted to stand.
Reversed.
NOTES
[1] The trial court also found Mr. Agudo to be a fit and proper person, which finding is, as will be seen, not relevant to the issues on this appeal.
[2] For example, Dr. Bruce Alspach, a psychiatrist, testified:

"The characteristic reaction of a child when separated from a primary caretaker is anxiety, withdrawal and depression.
"You can have other symptoms as well such as loss of interest in food, apathy, gastrointestinal disturbances, thumb-sucking and head-banging.
"As has been demonstrated in many studies, a child does not continue to grow as well as they would be expected to otherwise and intellectually their development is impaired and their ability and interest in forming relationships with people diminishes... ."
[3] While, all things being equal, mothers and fathers get equal consideration in matters of custody, see § 61.13(2)(b), Fla. Stat. (1979); Anderson v. Anderson, 309 So.2d 1 (Fla. 1975), all things are not equal during the bonding years when only one of them, assuming fitness, is in the position to be, and is in fact, the primary caretaker. The question whether the end of the bonding stage of development is a substantial and material change in circumstances which would allow a court to revisit the issue of custody is not before us.
[4] The thrust of Mr. Agudo's motion and the hearing itself was Mrs. Agudo's contempt. Her suggestion here that the "change of residence" was proposed and accomplished as a form of punishment to her is not, in light of the paltry evidence supporting the change, far-fetched. Changing the custody of a child is not a device to be used to obtain compliance with other court orders. See Doran v. Doran, 212 So.2d 100 (Fla. 4th DCA 1968); State ex rel. Fox v. Webster, 151 So.2d 14 (Fla. 3d DCA 1963); see also Dubocq v. Dubocq, 338 So.2d 67 (Fla. 3d DCA 1976).
[5] This same concern was expressed by Mr. Agudo prior to the entry of the court's order in October placing the child with Mrs. Agudo. By the time of the November hearing, the yard was fenced and the exits from the house to the pool secured by locks.
[6] Similarly, the sufficient cause which must be shown to justify setting aside an order, albeit interlocutory, is greater where, e.g., by statute or rule one party is entitled as a matter of right to the entry of the order, see Tremblay v. Marck, 378 So.2d 855 (Fla. 4th DCA 1979), or where a party changes his position in reliance on an interlocutory order, see American Fidelity Fire Insurance Company v. Woody's Electric Service, Inc., 407 So.2d 947, 948 n. 3 (Fla. 3d DCA 1981) (Case No. 80-2198, opinion filed December 8, 1981).
[7] We disregard the husband's concession before us that his burden was to show a substantial and material change in circumstances. The concession fails to distinguish between the rule applicable to interlocutory orders and that applicable to final judgments and decrees. In the latter case, the final judgment and decree is regarded as res adjudicata as to all circumstances concerning the custody issue existing at the time of the entry of the judgment or decree. Belford v. Belford, 159 Fla. 547, 32 So.2d 312 (1947); Frazier v. Frazier, 109 Fla. 164, 147 So. 464 (1933); Meadows v. Meadows, 78 Fla. 576, 83 So. 392 (1919). While the principle of res adjudicata has been held to apply to the issue of custody, Walfish v. Walfish, 383 So.2d 274 (Fla. 3d DCA 1980); Baker v. Baker, 360 So.2d 19 (Fla. 4th DCA 1978); Avery v. Avery, 314 So.2d 198 (Fla. 1st DCA 1975); Spradley v. Spradley, 312 So.2d 215 (Fla. 1st DCA 1975); Nicholson v. Nicholson, 311 So.2d 676 (Fla. 4th DCA 1975); Teta v. Teta, 297 So.2d 642 (Fla. 1st DCA 1974), the principle (which ordinarily precludes the relitigation of matters which could have been, but were not, considered) is not rigidly applied in matters of custody. See Meadows v. Meadows, supra ("... the proper custody of the minor child is a proper subject for consideration by the chancellor at any time, even if facts in issue could have been considered at a previous hearing, if such facts were not presented or considered at a former hearing.").
[8] The affidavit of Melvin S. Wise, M.D., a child psychiatrist, submitted to the trial court in support of the mother's motion to stay the order changing custody, echoed the same thought: "Furthermore, it is evident that moving the child back and forth with temporary custody arrangements here and there is a capricious disregard of this little girl's best interests which will result in emotional damage."