785 So.2d 600 (2001)
Karen MEIXNER, Appellant,
v.
Ronald C. MEIXNER, Appellee.
No. 3D01-607.
District Court of Appeal of Florida, Third District.
April 25, 2001.
*601 Melvyn B. Frumkes, Miami, for appellant.
Abrams, Etter & Marks and Deborah Marks, Coconut Grove, for appellee.
Before SCHWARTZ, C.J., and JORGENSON and GREEN, JJ.
JORGENSON, Judge.
Karen Meixner, the mother, appeals from a post-dissolution order transferring primary residential custody of her daughter to Ronald Meixner, the father. For the reasons that follow, we reverse.
The parties' final judgment of dissolution of marriage entered in Dade County incorporated their settlement agreement and provided that the mother would have primary residential custody of their minor daughter, born in February, 1995. Pursuant to that agreement, the mother and daughter moved to London. The father was awarded visitation rights in London, Germany, and the United States.
In May 2000, the father filed a "Verified Motion for Enforcement and Contempt of Shared Parental Responsibility/Visitation/Accounting Provisions." In his motion the father alleged, inter alia, that the mother had refused unsupervised or overnight visitation and did not cooperate with him in arranging for visits. The father asked the trial court to hold the mother in contempt and to delineate and enforce the parties' visitation schedule. The father did not request a change in custody. The mother was served with process in London and did not attend the scheduled hearing.
At the hearing, the trial court found the mother in willful violation of the final judgment of dissolution of marriage and issued an order to show cause to appear on February 5, 2001 and demonstrate
why she should not be held in indirect criminal contempt of shared parental responsibility and visitation ... why she should not be incarcerated for her wilful failure to comply and whether the Court should consider a change in custody for wilful failure of visitation in accordance with the Visitation Rights Enforcement Act of 1996.
The mother was served with this order in London. She did not appear at the February 5 hearing, but was represented by counsel. Her attorney indicated that his client in London was available to testify by telephone; the trial court rejected that option.
The trial court granted the father's motion, awarded him custody, and ordered that the child be immediately returned.[1] In closing, the court stated "Maybe that will get Ms. Meixner back. Maybe then she will understand the jurisdiction in this matter."
At the outset, it is questionable whether the trial court had subject matter jurisdiction over these proceedings. Although the court's jurisdiction "must be presumed to continue once it is validly acquired under section 61.1308," Yurgel v. Yurgel, 572 So.2d 1327, 1332 (Fla.1990), it does not continue by its own force. "[I]t continues up until a Florida court expressly determines on some other basis that jurisdiction no longer is appropriate, until virtually all contacts with Florida have *602 ceased, until some other Florida statute terminates jurisdiction, or until jurisdiction is terminated by operation of the PKPA [Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A]." Id. When the child and all parties have moved away from the forum state, that state may lose jurisdiction over disputes that invoke the UCCJA. See Lamon v. Rewis, 592 So.2d 1223, 1225 (Fla. 1st DCA 1992). Cf. Pettinato v. Johnson, 674 So.2d 148 (Fla. 2d DCA 1996) (holding that where parties were divorced in Florida, and mother moved with minor child to New York and child has had virtually no contact with Florida, Florida court retained jurisdiction where father continued to reside in Florida; witnesses from New York could testify by telephone).
The father's current residence is not a matter of record, although the mother's attorney has repeatedly asserted that the father is a resident of Germany. The father himself took that position when he moved to dismiss an earlier support enforcement proceeding in Florida brought by the mother. His motion argued that
the [mother] and minor child are residents of London, England, while the [father] is a citizen of the Republic of Germany and a resident of Munich, Germany ... Neither of the parties are citizens of the United States, the child is not present in the United States and has not been since this dissolution of marriage and there is no necessity for the Courts of the State of Florida to invoke their jurisdiction to protect the interest of a foreign child not located within this jurisdiction.
If the father no longer resides in Florida, then the trial court lacked jurisdiction. However, we are reluctant to reach that conclusion on the scant record before this court. If there are further proceedings in this case, the trial court should first determine whether it has continuing jurisdiction, and should caution the father that jurisdiction is not a matter of convenience, to be asserted or contested depending on which party is seeking to enforce the final judgment.
Assuming that the trial court had jurisdiction, the order on appeal cannot stand. "Mere frustration of visitation alone is insufficient to change custody." Schweinberg v. Click, 627 So.2d 548, 551 (Fla. 5th DCA 1993) (citing Crippen v. Crippen, 508 So.2d 1339 (Fla. 4th DCA 1987)); see also Agudo v. Agudo, 411 So.2d 249, 251 n. 4 (Fla. 3d DCA 1982) ("Changing the custody of a child is not a device to be used to obtain compliance with other court orders."). Moreover, the trial court's disapproval of the mother's decision not to appear at the hearing other than through counsel cannot form the basis for the change of custody. See Crippen, 508 So.2d at 1340 ("The affront to the trial court's authority should be subordinated to the welfare of the children.").
Finally, the order changing custody to the father cannot stand because it is devoid of any findings that there has been a substantial change in circumstances since the initial decree and that a change of custody is in the best interest of the child. See Perez v. Perez, 767 So.2d 513, 516 (Fla. 3d DCA 2000) ("A parent seeking to modify a prior custody award bears the extraordinary burden of demonstrating a substantial change in circumstances since the entry of the initial custody decree and that the child's best interest or welfare will be promoted by the change.").
REVERSED.
NOTES
[1] At no point in the proceedings did the father petition for a change in custody.