659 So.2d 1228 (1995)
Rosann CARD, Appellant,
v.
Mark K. CARD, Appellee.
No. 94-1495.
District Court of Appeal of Florida, Fifth District.
August 25, 1995.
*1229 Brian D. Lambert of Lambert & Himes, P.A., Ocala, for appellant.
Margaret Palmer of Margaret Palmer, P.A., Ocala, for appellee.
PETERSON, Chief Judge.
Rosann Card appeals a final order denying her post-dissolution of marriage petition for permission to relocate with her minor son and new husband from Tampa, Florida to the state of Colorado.
Brandon Heath Card, the child of Rosann and her former husband, appellee, Mark K. Card, was born March 2, 1986. Primary custody of Brandon was awarded to Rosann pursuant to a March 4, 1991 final judgment dissolving the marriage. After the dissolution, Rosann and Brandon began living with Blair Hamrick until Rosann decided it was in the best interest of Brandon that she end the live-in arrangement with Blair. She moved to a rental apartment and when the rent increased she moved to another apartment complex. She worked for the YMCA for $6.25 an hour and received child support of approximately $300 per month from Mark. Mark later testified that the living conditions for his son were deplorable in the rental apartments because, among other complaints, his son had no place to ride his bicycle.
On October 19, 1993, Rosann and Blair married. At about this time, however, Blair was required to move to Littleton, Colorado in order to continue his employment with a pharmaceutical company. On November 3, 1993, Rosann filed the instant petition seeking permission to move to Colorado with the parties' minor child, Brandon. At the hearing held on the petition, Blair testified that he sought other job opportunities in order to avoid the move, but comparable job opportunities *1230  compensation of $45,000 per year, a company car, and health insurance for his family  were not available. There were positive aspects of the contemplated move. Rosann's sister and the sister's family also lived in Colorado, and Brandon would be living in a single-family residence rather than in an apartment.
Mark's strong attachment to and frequent exercise of visitations with his son made the trial court's decision difficult. Mark is a fireman and has a work schedule that requires him to work a 24-hour shift and then be off 24 hours. He spent most of his off-duty hours with his son whenever visitation was prescribed by the final judgment or voluntarily allowed by Rosann. He would sometimes travel from Ocala to Tampa just for the chance to spend ten or more minutes with his son. He testified that of the 25 weekends during which he did not have court-ordered visitation he probably spent 20 of them visiting his child anyway at the YMCA where the former wife worked.
In Mize v. Mize, 621 So.2d 417 (Fla. 1993), the supreme court held:
We adopt the approach articulated in Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), review denied, 560 So.2d 233 (Fla. 1990). As Judge Schwartz stated: "[S]o long as the parent who has been granted the primary custody of the child desires to move for a well-intentioned reason and founded belief that the relocation is best for that parent's  and, it follows, the child's  well-being, rather than from a vindictive desire to interfere with the visitation rights of the other parent, the change in residence should ordinarily be approved. 548 So.2d at 707-708 (Schwartz, J., concurring specially) (footnotes omitted)."
However, Judge Schwartz recognized that circumstances may exist that would justify a departure from the general rule. 548 So.2d at 708 n. 3. For example, when older children are involved, the trauma of leaving friends, other family members, and school may outweigh the trauma in separating from the primary residential parent. See id. Thus, in making the ultimate decision, trial courts must consider and weigh factors discussed by Judge Nesbitt, such as:
1. Whether the move would be likely to improve the general quality of life for both the primary residential spouse and the children.
2. Whether the motive for seeking the move is for the express purpose of defeating visitation.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing, meaningful relationship between the child or children and the noncustodial parent.
5. Whether the cost of transportation is financially affordable by one or both of the parents.
6. Whether the move is in the best interests of the child. (This sixth requirement we believe is a generalized summary of the previous five.)
* * * * * *
However, in cases where the final judgment incorporates a prohibition against the relocation of the child thereby reflecting that the issue was litigated, the parent with the primary residential responsibility must show a change of circumstances in order to justify the relocation.
Mize, 621 So.2d at 419-20.
In the instant case, shortly after the judgment of dissolution was entered, a modification order was entered which included a provision prohibiting either party from permanently removing the minor child from the State of Florida. Accordingly, Mize requires that the parent with the primary residential custody, Rosann, also show a change in circumstances justifying the proposed relocation. Id. But while Rosann must justify the relocation, the child's best interest remains the primary consideration. Id.
*1231 In the proceedings below, Rosann demonstrated the requisite change in circumstances justifying the relocation by showing that her new husband sought but was unable to obtain comparable employment in Florida, and that, in order to maintain his employment with his employer of three years, he was required to accept employment out of state. Even Justice Shaw, in his Mize dissent, lists as a generally convincing reason for a move "a mandatory transfer at a longheld job for the custodial parent or new spouse of that parent." Mize, 621 So.2d at 424 n. 17 (Shaw, J., dissenting).
In analyzing the Hill factors in accordance with Mize, the trial court concluded that the move to Colorado was not in the best interest of the child because it would not improve the quality of life for either Rosann or Brandon. The court also based its decision against the move on its finding that the substitute visitation proposed would not be "adequate to foster a continuing meaningful relationship between the child and the noncustodial parent." While recognizing the broad discretion afforded to trial courts in these determinations, we find we are unable to agree with the trial court's assessment of either of these factors (the only two of the first five in which it ruled against Rosann). Stockburger v. Stockburger, 633 So.2d 1140, 1142-43 (Fla. 2d DCA 1994). Because these and the other four factors each militate in favor of removal, and the removal was otherwise justified by a change in circumstances, we conclude Rosann should have been permitted to move to Colorado with Brandon.
Rosann's lifestyle will be enhanced immeasurably by the move. Before Rosann initiated the request for permission to move, she was a single mother supporting her child with minimal financial resources in the form of $288.16 per month as child support and a job paying $6.25 per hour. She was forced to live in conditions described as deplorable by Mark. Now, she is married to Blair, who earns $45,000 per year plus fringe benefits, and she has the opportunity to live in a single-family residence in a family setting with her son and her new husband. Denial of the request to move will require the new husband's earnings to be dissipated by the maintenance of two homes and travel to and from Colorado in order to maintain the family relationship. Absent permission to move with the child, Rosann has no choice but to live in that stressful situation or to surrender custody of her son. There is little question that both Rosann's and Brandon's lives would be drastically improved by the move.
As to whether the substitute visitation is adequate to foster a meaningful and continuing father/son relationship, the trial court concluded in its final order that:
Relocation is incompatible with the father's interest in maintaining frequent and continuing contact with his son. This is also the state's interest, section 61.13(2)(b)1., Florida Statutes (1993). Allowing the move will just invite problems for a child who has thrived under the close involvement of two parents.
Mize does not require the maintenance of frequent and continuing contact. Rather, it requires an assessment of, among other things, whether the substitute visitation proposed is adequate to foster a meaningful and continuing relationship. Mize recognizes the difficulties which arise where distant moves are contemplated by the custodial parent. Mize seeks to provide trial courts with guidance in providing for the child's best interests and in reaching what might not be an optimum result for each of those involved. In the instant case, after closing arguments by the parties, the trial court observed:
Where a father has vacation time and the ability to go to the other state, it is possible with the visitation arrangement that is proposed by [the child psychologist] to see your child every other month, December for Christmas, February for a visit, take a vacation, April for spring break, June for summer vacation. The child goes back in August, skip September, October you take a week and go see them. Then it's November and you're back to December. So it's not like you have to spend six months *1232 without seeing your child. There's room for compromise if people want to compromise.
As the trial court itself noted, there are multiple visitation alternatives in this case despite the substantial geographic distance between the parties. These visitation options, while obviously not providing for the frequent and continuous contact that the father has experienced in the past, can nevertheless be used to adequately "foster a continuing, meaningful relationship between" Brandon and his father.
Because the mother demonstrated that her move complied with the requirements of Mize, and otherwise provided justification for the move, the trial court's order denying her petition to relocate is reversed.
REVERSED.
GRIFFIN and THOMPSON, JJ., concur.