685 So.2d 946 (1996)
Angela L. LANDINGHAM, a/k/a Angela L. Tabert, Appellant,
v.
Kenneth E. LANDINGHAM, Appellee.
No. 95-4555.
District Court of Appeal of Florida, First District.
December 20, 1996.
Rehearing Denied January 31, 1997.
*947 Bill A. Corbin, Blountstown, for appellant.
Patrick J. Faucheux, Panama City, for appellee.
WOLF, Judge.
Angela L. Landingham, now known as Angela L. Tabert, appeals an order granting her former husband's petition for modification of primary physical residence of the couple's minor child, denying her petition to dissolve a restriction prohibiting the removal of the child from Bay County, and finding her in contempt of court. We reverse as to all issues.
The parties were divorced in 1988, with the former wife receiving primary physical residence of the couple's minor daughter. The final order dissolving the marriage did not contain restrictions concerning relocation. Appellant remarried in November of 1991 and moved to Colorado where her new husband was employed, taking the child with her. Soon after the child's relocation to Colorado, the former husband filed a petition seeking primary physical residence of the child and seeking an injunction prohibiting relocation of the child. In September of 1992, the trial court entered an injunction prohibiting either party from removing the child from Bay County without court approval or the other parent's consent. It is unclear what evidence was presented to support this restriction. Sometime after the former husband filed his petition for modification of custody, the former wife and her family returned to Florida. In November of 1992, the trial court denied the former husband's petition for modification of custody, but incorporated the restriction on relocation into the final judgment dissolving the parties' marriage.
In January of 1994, the parties began discussing the possibility of the former wife's relocating to Colorado. The parties and their attorneys discussed possible visitation arrangements, but never came to an agreement. In June of 1994, the former wife and her family moved back to Colorado without making a request to modify the court's relocation restriction. The record reflects that the move was a result of financial considerations. After this second move to Colorado, the former husband had access to the child, and the child spent all her school breaks with him. After she had moved to Colorado, the former wife petitioned the court for the removal of the restriction on relocation of the child. At the same time, the former husband filed a petition for modification of custody and a petition to hold the former wife in contempt for her violation of the court-ordered restriction on the child's relocation.
In August of 1995, the trial court heard the parties' petitions. The former husband relied on the former wife's relocation to Colorado in violation of the court restriction as a substantial change in circumstances necessitating a change in the child's primary residence. The former husband did not allege or present evidence that the former wife's residence *948 had become unsuitable for the child, nor did he present evidence that the former wife's move was made to preclude reasonable visitation by the former husband.
The former wife and her new husband testified that the move to Colorado had improved their work schedules and overall quality of life. Prior to the move, the former wife's new husband had worked three different simultaneous jobs, putting in 75 hours a week, and earned $18,500; he had looked for and was unable to find better employment in Bay County and surrounding areas; in addition, the former wife had worked 50-60 hours a week as a waitress, bringing the household's combined total income to $24,000. In Colorado, the former wife's husband retained regular full-time employment, working 40 hours a week, Monday through Friday, earning $29,000 plus benefits, and the former wife worked 25 hours a week from her home in Colorado, earning $700 per month. Because of their favorable work schedules in Colorado, the former wife and her husband were able to spend more time with the child, and the former wife was able to regularly participate in the child's school activities.
In contrast to the former wife's improved situation, the record suggests that the former husband's work record was erratic, as he was holding several different odd jobs, and had changed jobs several times in 1995. The former husband worked over 40 hours a week, mainly at night, and also on weekends. Because of his erratic work schedule, the child spent a significant amount of time with other relatives during her visitation time with the father. Further, several witnesses presented an unfavorable picture of the former husband's living conditions and his ability to care for the child and to contribute to the child's necessities. Specifically, evidence was presented concerning the cleanliness of the former husband's house, his failure to provide clean clothes and to enforce good personal hygiene habits for the child. The former husband admitted most of the facts presented by these witnesses except those related to the child's personal hygiene.
In September of 1995, the trial court denied the former wife's request to dissolve the restriction on the child's relocation and gave the former husband primary physical residence of the child. In its order, the trial court found that there had not been a change in circumstances since the issuance of the restriction on the child's relocation, which would warrant its removal. The trial court also found the former wife in contempt of court based on her removal of the child from Bay County, against the existing restriction. The court's order gave the former wife the opportunity to purge herself by paying the former husband $1,000 for expenses incurred in visiting with the child.
The trial court based its award of custody to the former husband on the facts that the child had lived in Florida all seven years of her life, that she had extended family in Florida, and that the former husband had a close relationship with the child. The order also stated that the former wife had impeded the former husband's access to the child. To support such a finding, the trial court relied on an unconfirmed statement by a single witness who alleged that the former wife had planned to send the child to Florida to visit her grandmother without notifying the former husband; however, the record did not reflect that this alleged visit to the grandmother ever took place. The overwhelming evidence presented suggested that the former wife attempted to facilitate reasonable visitation with the former husband, including three visits with the former husband by the child during school breaks.
There are three issues raised in this appeal: (1) Whether the trial court abused its discretion when it denied the former wife's request to remove the existing restriction on the child's relocation; (2) whether the trial court abused its discretion when it changed the child's custody from the former wife to the former husband; and (3) whether the trial court followed the proper procedure in holding the former wife in contempt of court for her violation of the restriction on relocation.
There is some confusion concerning the standards for allowing a custodial parent to relocate where the court has previously entered an order incorporated in the final judgment of dissolution prohibiting the relocation of the child. See Judge James S. Moody, Jr. *949 & Phillip S. Wartenberg, The Birth of a Legal Presumption, 70 Fla. B.J. 68 (November 1996).[1] The general rule concerning relocation of a custodial parent was pronounced in Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996). In Russenberger, the supreme court recognized that in Mize v. Mize, 621 So.2d 417 (Fla.1993), the court had adopted a presumption in favor of allowing good-faith relocation, and that the primary concern was the best interest of the child which was to be evaluated in accordance with the six factors contained in Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), rev. denied, 560 So.2d 233 (Fla.1990). Russenberger, supra at 1045. Russenberger, however, did not involve a relocation restriction. Russenberger v. Russenberger, 654 So.2d 207, 214 (Fla. 1st DCA 1995). Therefore, as pointed out in the Moody article, it may be argued that there is still some uncertainty in relocation cases where the divorce decree contains relocation restrictions. These uncertainties are (1) whether it is necessary for the party requesting to relocate to demonstrate a substantial change of circumstances prior to applying the Mize /Russenberger presumption; and (2) if a substantial change of circumstances was required to be shown, to what extent would the general law concerning the requirements of a change of circumstances be applied in these cases.
The Mize case itself, however, involved a situation where the final judgment of dissolution contained a provision stating that "both parties are expressly forbidden to move [the child] from the State of Florida without the express provisions of the Court." Id. at 418-419. There, the supreme court specifically stated that "in cases where the final judgment incorporates a prohibition against the relocation of the child," it is necessary to "show a change of circumstances in order to justify the relocation." Id. at 420. Therefore, under Mize, modification of relocation restrictions are subject to the same general rule as modifications concerning custody: There must be a showing of a substantial change of circumstances. However, the specifics of what must be shown to constitute a substantial change of circumstances in each case may differ greatly.[2] In a modification of custody, the burden has been described as "extraordinary." Smoak v. Smoak, 658 So.2d 568 (Fla. 1st DCA 1995). The question before us is: To what extent should this extraordinary standard be applied to a party seeking to modify a relocation restriction?
In the present case, the issue may be presented as whether a voluntary move by the custodial parent, even if well intentioned and determined to be in the best interests of the child, can be considered to be a substantial change of circumstances which would justify modification of a relocation restriction even if it does not meet the extraordinary standard. There is legal support and sound public policy reasons for allowing a proposed modification of a relocation restriction under these circumstances without meeting the stringent test.
In Mize, while the court stated that there must be a substantial change of circumstances, the court also reiterated, "In all cases of this type, the best interest of the child clearly is the prime consideration." Id. at 420. Further, the facts in Mize reflect that the main consideration for relocation was "that [the former wife] had received an offer of employment in California that would increase both her rate of pay and her potential for promotion and that her father, the child's maternal grandfather lives there and would provide support." Id. at 419. The supreme court determined that these circumstances were sufficient in Mize to support modification and to allow the trial court to then determine whether the proposed move was in the best interest of the child.
*950 In Card v. Card, 659 So.2d 1228 (Fla.5th DCA 1995), the fifth district determined that appellant "demonstrated ... that her new husband sought but was unable to retain comparable employment in Florida, and that, in order to maintain his employment with his employer of three years, he was required to accept employment out of state." Id. at 1231. In the instant case, while the proposed relocation was not as a result of a transfer by an existing employer, it is undisputed that appellant and her new husband were able to obtain more lucrative and flexible employment in Colorado which would allow them to better care for the minor child. It is also undisputed that the new husband had been unable to find suitable employment in Bay County. We are unable to materially distinguish the Card case from the case before us. In both cases, the employment opportunities were better outside of the state.
There are also several sound public policy reasons for not requiring the same rigid standard in determining the existence of a substantial change of circumstances in modification of relocation restriction cases as what is applied in modifications of custody cases. First is the public policy adopted in this state in Mize and Russenberger which favors the rights of the custodial spouse to maintain freedom of movement if the move is made for well-intended reasons.[3] This policy effectively questions the basis for many of the relocation restrictions which have been included in court decrees. In relocation restriction cases, it is logical to assume that the court has determined that it is in the best interest of the child to be with the custodial parent. In these cases, rigid enforcement of a relocation restriction may harm the very relationship which the court has previously determined to be in the best interest of the child. This is exactly the opposite situation from one where the court is considering a modification request concerning a change of the custodial parent. See generally Bridges v. Bridges, 625 So.2d 93 (Fla. 1st DCA 1993).
We find, based on the record before us, that the former wife demonstrated a substantial change of circumstances based on the application of the Russenberger and Mize factors. We also determine that the undisputed record demonstrates that the move would be in the best interest of the child. We, therefore, reverse the trial court's order denying the petition to relocate.
The former wife also argues that the trial court abused its discretion when it modified the child's primary physical residence. A noncustodial parent seeking modification carries "an extraordinary burden" to satisfy the two-prong test necessary to support a change of custody: The noncustodial parent must show (1) that a substantial change in circumstances had occurred, and (2) that the best interest of the child would be promoted by a change in custody. Smoak, supra at 568. Appellee, the noncustodial parent here, requested modification of custody based on appellant's violation of the injunction. It is well settled that a trial court cannot modify a child's custody to punish the custodial parent. See Ginder v. Ginder, 536 So.2d 1155 (Fla. 1st DCA 1988), rev. denied, 544 So.2d 199 (Fla.1989) (holding a court cannot change custody without showing that the change is in the best interest of the child); Eddy v. Napier, 558 So.2d 199, 201 (Fla. 2d DCA 1990); State ex rel. Tilden v. Utreva, 386 So.2d 1 (Fla. 3d DCA 1980) (reversing a trial court's modification of custody based on the father's failure to return the children to the mother as required by a court order); Doran v. Doran, 212 So.2d 100 (Fla. 4th DCA), cert. denied, 218 So.2d 174 (Fla.1968).
Although appellant violated the injunction when she moved to Colorado with the child, vindication of the trial court's authority is subordinate to the child's welfare. Crippen v. Crippen, 508 So.2d 1339 (Fla. 4th DCA 1987). "Changing a child's custody is not a device to be used to obtain compliance with court orders." Id. at 1340 (quoting Agudo v. Agudo, 411 So.2d 249 (Fla. 3d DCA), rev. denied, 418 So.2d 1278 (Fla.1982)); see also Doran, supra; Begens v. Begens, 617 So.2d 360 (Fla. 4th DCA 1993) (reversing the trial court's custody modification after finding it *951 based on the mother's frustration of court-ordered visitation). The former husband failed to present any evidence which showed that the former wife's residence had become unsuitable for the child and it was in the child's best interest to change residential custody to him. See Schweinberg v. Click, 627 So.2d 548 (Fla. 5th DCA 1993). Thus, it was error to change custody from the mother to the father.
Finally, the former wife argues that because the contempt order was issued after she violated the court's injunction, the court's contempt was criminal as opposed to civil. The contempt, she argues, was intended to punish her for violating the court's injunction. She asserts, therefore, that this was an indirect criminal contempt proceeding and, as such, had to comply with the procedures set out in Florida rule 3.840 which requires the trial court to issue an order to show cause. Because she never received an order to show cause, the former wife argues that the trial court's contempt should be reversed. We agree with this contention.
If the purpose of contempt is to coerce action or nonaction by a party, an order of contempt is civil. Pugliese v. Pugliese, 347 So.2d 422, 424 (Fla.1977). On the other hand, criminal contempt proceedings are initiated to vindicate the court's authority or to punish conduct in violation of a court order. Id. In the instant case, the child was already back in Florida when the court issued its contempt order. The court's contempt order, therefore, was not intended to coerce the former wife into obeying the court's injunction; rather, it was intended to punish her violation of the injunction. The transcript of the court's hearing supports the contention that the court intended to punish the former wife for violating the court's injunction.
THE COURT: Is there any dispute but what the child was moved to
MR. CORBIN: No, sir.
THE COURT:Colorado
MR. CORBIN: June of last year.
THE COURT:contrary to the court order?
THE COURT: So it occurs to me, unless someone will clear up what I'm thinking, that the contempt is a foregone issue. The only question is what sanctions should be imposed.

By the time of the hearing, the trial court had already concluded that its duty was to impose sanctions upon the former wife. Because the court did not follow appropriate procedure pursuant to rule 3.840, we reverse as to this issue. In light of our determination as to the relocation issue, we find no basis for the trial court to readdress the issue of contempt. We, therefore, order the trial court to enter an order finding that appellant was not in contempt of court.
The order of the trial court is reversed, and the trial court is directed to enter an order in accordance with this opinion.
JOANOS and PADOVANO, JJ., concur.
NOTES
[1] The Moody article is subtitled "The Law's Latest Answer to a Difficult Sociological Problem: Geographical Relocations after Dissolution."
[2] For instance, in cases involving modification of alimony, it has been determined that the substantial change of circumstances must be significant, material, permanent, and involuntary. Pimm v. Pimm, 601 So.2d 534 (Fla.1992). In the Moody article, there is some suggestion that these standards should be applicable to relocation. There appears to be no support for applying the stringent alimony standards to determinations involving custody where the overwhelming concern is the best interests of the child. See Mize, supra; Ward v. Ward, ___ So.2d ___, 21 Fla. L. Weekly D1961 (Fla. 1st DCA Aug. 30, 1996).
[3] See Judge Harris' concurrence in Hagins v. Hagins, 678 So.2d 479 (Fla. 5th DCA 1996), identifying a number of reasons behind this public policy.