THOMPSON, Judge,
concurring in part, dissenting in part.
I agree that the case should be remanded. However, there are several issues on appeal worthy of discussion: whether Mize v. Mize, 621 So.2d 417 (Fla.1993), applies to this case; if so; whether the trial court applied the correct standards under Mize; and whether the trial court erred in prohibiting the presence of court reporters during proceedings held in chambers. Because of my view of Mize, section 61.13(3), and the facts of this case, I disagree with Judge Harris that the trial court should conduct another evidentia-ry hearing. The record shows that all of the factors were before the trial court including “the best interests of the child.” I would remand with instructions that the trial court enter an order allowing Mary to remove the children from the state and to modify the judgment to ensure adequate visitation by Edward Rice (the former husband). ■
Judge Harris writes that neither parent has prevailed “under a sections 61.13(3) analysis,” and that therefore a rehearing is necessary to apply section 61.13(3) factors in addition to the Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), rev. denied, 560 So.2d 233 (Fla.1990), factors. I add these addition-aT facts to support my argument that a rehearing is unnecessary.

FACTS

Mary J. Mahnke and Edward Rice petitioned the trial court in 1993 to dissolve their marriage. As part of the proceedings, Mary and Rice negotiated a marital settlement agreement concerning, inter alia, child custody, visitation, and relocation of the children. The marital settlement agreement was incorporated into the final judgment. The part of the agreement germane to my review is the following restriction on relocating the children:
6. GEOGRAPHICAL RESTRICTION.
Neither party shall change the primary physical residency of the minor children from the Central Florida area, defined as a 50-mile radius of Orlando, Florida, without either the written consent of the other party or appropriate Court Order, normal vacation periods excepted.
On 27 February 1996, Mary petitioned for modification of the final judgment of dissolution, alleging that there had been a material change in circumstances prompting her need for relief from the geographical restriction. Mary had remarried and her husband, Michael Mahnke, had transferred his employment from Orlando, Florida, to Illinois. Mahnke was a 23-year federal employee whom the United States Postal Service had employed (“USPS”) for 18 years. Mary also was an 18-year employee of the USPS. At the time of the hearing, Mahnke had been in the new position in Illinois for six months and had purchased a home near his work place. Mary remained in a house she rented from her parents for $800 per month and continued her employment with the USPS. Her parents lived nearby and helped care for the two children. Mahnke testified that the *1239 USPS had promoted him to a position comparable to the one he had in Florida, and that Mary would have a position at the same facility once she moved to Illinois. He also testified that they could not afford to maintain two homes indefinitely. Mary testified that the home they purchased in Illinois was very close to a church where they would worship and was better than a comparably priced home in Orlando. Further, the nearby elementary school had smaller classes than the schools the children attended in Orlando, and Mary considered the school to be better than those in Orlando. Mary submitted a visitation plan that would allow Rice to see the children 91 days of the 102 days per year that the children would be out of school. Mary and Mahnke agreed to pay for three lengthy visits so the children could spend 71 of the 91 days with Rice. They also agreed to pay for all the visitations if the court so ordered.
Rice countered with a motion to enforce the restriction. He testified that he also worked for the USPS and was very involved in the lives of his children. He exercised 124 days of visitation in 1994, and 112 days in 1995. To allow the children to move would devastate his opportunity to exercise meaningful visitations, he testified. Rice had remarried, and his two children got along well with his stepson. Rice also testified that he could not afford to fly to Illinois monthly or quarterly to visit with his children. He argued the move was voluntary and required only because Mahnke had violated USPS rules. Mahnke had to relocate or be fired. Further, Mahnke did not try to find similar employment in Central Florida other than to review ads in the newspaper and talk with a career counselor. Therefore, Rice argued, the move was not permissible because there was no substantial change in circumstances.
Besides the parties, the court received the testimony of Dr. David J. Fleisehmann, a clinical psychologist, and Tim Hartung, an attorney who was the court-appointed guardian ad litem for the children. Dr. Fleiseh-mann testified that he had provided marriage counseling to Mary and Rice. He had also counseled the children regarding Mary’s petition. Dr. Fleisehmann opined that the two children would “weather the move well.”' Attorney Hartung testified that the children looked forward to the move, but that one child would miss her friends.
The trial judge did not announce his ruling at the close of the hearing. Rather, the judge met with the parties’ attorneys in chambers to discuss his decision before entering a written order. The trial court did not permit the court reporter hired by Mary’s attorney to attend the hearing though the attorney objected. The trial court also excluded the parties because the court felt it would not be in their best interest. However, the record contains a statement of proceedings approved by the judge and both attorneys. See Fla. R.App. P. 9.200(b)4. The statement reflects the following legal conclusions by the court:
5. The believable, credible evidence indicates that the “Mize question” was considered at the time of the parties’ separation, agreement and subsequent divorce. Therefore, Mize is not controlling here on these facts.
6. The correct standard to be applied is substantial change of circumstances, which has not been proven.
7. It is not in the best interests of the children to lose the frequent, continuous and meaningful contact with the Former Husband and the grandparents.
8. The believable, credible evidence establishes that the desired move by the Former Wife was voluntary and the reasons for same do not constitute grounds sufficient to establish a substantial change of circumstances.
11. The maternal grandparents of the subject children hereto have had continuous, meaningful, and frequent relationships with the minor children.
12. The Court specifically finds that based on all of the evidence presented over the two (2) day trial that it is not in the best interest of the children to relocate to the State of Illinois.
The trial court granted Rice’s motion to enforce the geographic restriction and denied Mary’s petition. The court also scheduled another hearing with the lawyers to discuss *1240 the form of the order. Again, neither the parties nor a court reporter was allowed to attend. The final order denying Mary’s supplemental petition for modification contained the findings from the statement of proceedings.
WHETHER THE MIZE ANALYSIS APPLIES TO THIS CASE.
The trial court determined that Mize did not control its consideration of the move. The trial court found that the parties had been aware of Mize at the time the marital settlement agreement was drafted and executed. Therefore, the court concluded, the correct standard to apply was whether a “substantial change of circumstances had been shown.” By applying this standard, the trial court determined Mary did not meet her burden of proof. This was error.
Before Mize, Florida’s district courts of appeal applied different standards to requests to relocate with a minor child. Id. at 1044. In Mize, the supreme court adopted the Third District’s approach favoring relocation in Hill. The supreme court stated that the use of the six factors discussed in Hill[1] would help the court in determining if the move was in the best interest of the child. Mize at 420. Like this case, Mize involved an agreement not to relocate the children from the state without approval of the noncustodial parent or the court. Thus, I fail to see the logic of the trial court when it determined that Mize would not apply to this ease.
Before Mize, the substantial change of circumstances was one test for relocation. See, e.g., Mize v. Mize, 589 So.2d 959 (Fla. 5th DCA 1991), and eases cited therein; Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984). In Mize, the supreme court held that where the final judgment contains a geographic restriction, the primary residential parent “must show a change in circumstances to justify the relocation.” Mize at 419-420. It may be that the trial court considered the Mize factors and concluded that the move would not be in the best interest of the children, but that is not what the trial court wrote. The order is without discussion or consideration of the six factors. It was error for the trial court not to apply the Mize factors to this case. See Card v. Card, 659 So.2d 1228 (Fla. 5th DCA 1995) (holding that if a mother demonstrates that the relocation complied with the requirements of Mize and was not for vindictiveness, the trial court’s order denying the move should be reversed.)
WHETHER THE TRIAL COURT NEVERTHELESS APPLIED THE CORRECT STANDARD UNDER MIZE TO DETERMINE IF THE MOVE WAS IN THE BEST INTEREST OF THE CHILDREN.
Although the trial court wrote that Mize did hot apply, it went on to discuss “the substantial change of circumstances” standard. Rice argues that even if not properly identified as the Mize factors, the trial court nevertheless made a correct finding that the move was not in the best .interest of the children.' Again, I disagree.
The Florida Supreme Court recently reiterated that Mize governs relocation cases. Russenberger v. Russenberger, 669 So.2d 1044, 1046 (Fla.1996). Mize holds that a custodial parent’s request to relocate generally should be granted if the move is well-intentioned, not for any vindictive purpose, and believed in good faith to be in the parent’s and child’s best interests. Mize, 621 So.2d at 419.[2]
*1241 Under Mize, Mary had to show that there was no vindictive purpose behind the move to Illinois, and that she had a founded belief that the move was in the best interests of her and her children. Because of the geographical restriction, she had the additional burden of showing a change of circumstances justifying the relocation to Illinois. The record demonstrates that Mary made the required showing under Mize, and, I would argue, section 61.13(3). Mary’s reason for seeking relocation was to be with her husband. The husband’s reason for relocating was purely professional, and there is no evidence demonstrating a vindictive purpose for the move. Relocating to Illinois is in her best interests and those of her children because of the emotional and financial burdens on her family if she remains in Florida. In addition, the circumstances under which Michael accepted the position in Illinois sufficiently justify the relocation. Contrary to the trial court’s conclusion, Mary did sustain her burden under the controlling legal standard, Mize.
The analysis does not end there. Having carried her burden under Mize, Mary is entitled to a rebuttable “presumption in favor of [her] request to relocate” with children.[3] Russenberger, 669 So.2d at 1047. The factors enumerated in Mize are to be considered and weighed to determine whether the move is in the children’s best interests.
The move would improve the children’s general quality of life. Currently, their family is divided. Since February 1996, the family has had the financial burden of maintaining two households. Continued separation would increase the burden. See Card, 659 So.2d at 1231. Permitting the move would ease the emotional and financial stress on the family, thus improving the children’s quality of life. In addition, Michael testified that due to improved work schedules, they will not need before and after school care for the children. Also, both he and Mary described the new locale as a smaller, more family-oriented community than Orlando.
There is no evidence showing that Mary’s purpose in relocating is to defeat the children’s visitation with Edward, or that she would be unlikely to comply with substitute visitation arrangements once out of state. Rice did testify that he often had difficulty scheduling his floating visitation day each week. He also stated that Mary threatened to “move as far away as legally possible to interfere with my weekday visits” if the court denied her petition. However, Mary did not interfere with or object to Edward’s scheduled visits with the children. It also appears that despite any scheduling conflict, Edward nonetheless received his weekly floating visitation day. Moreover, Mary’s threat to move to the perimeter of the 50-mile area does not indicate an intent not to comply with court-ordered visitation if .permitted to relocate.
Mary’s proposed visitation schedule allows three month's of visitation during the year. The visits are scheduled in large blocks of time coinciding with the children’s school holidays. In addition, Mary anticipated visits to Florida which would afford Edward additional time with the children.
The trial court found that Edward has had “frequent, continuous, and meaningful” contact with the children. This is certainly an appropriate consideration. However, as this court has recognized:
*1242 Mize does not require the maintenance of frequent and continuing contact. Rather, it requires an assessment of, among other things, whether the substitute visitation proposed is adequate to foster a meaningful and continuing relationship. Mize recognizes the difficulties which arise where distant moves are contemplated by the custodial parent. Mize seeks to provide trial courts with guidance in providing for the child’s best interests and in reaching what might not be an optimum result for each of those involved.
Card, 659 So.2d at 1231. Dr. Fleischmann testified that the schedule proposed by Mary is adequate to protect the relationship between the children and their father. In addition, though Edward stated that he could not afford even quarterly trips to Illinois, Mary testified that she can pay all transportation costs,'if so ordered.
Finally, as Judge Harris noted in Hagins v. Hagins, 678 So.2d 479 (Fla. 5th DCA 1996), “[cjertainly, it would be in the best interest of the children if the parents continued to reside close enough so that ‘frequent and continuing contact’ with both parents could be achieved. However, circumstances sometimes dictate that such is not possible.” Hagins, 678 So.2d at 481 (Harris, J., concurring). The instant ease is one in which circumstances dictate that the parents cannot reside near each other. Here, it is in the best interests of the children that they and their mother are allowed to relocate to Illinois. Because Mary has met the criteria of Mize and Russenberger, her petition should be granted.
Based upon these facts, I disagree with Judge Harris that a rehearing is necessary upon remand to consider section 61.13(3) factors. First, the trial court accepted the marital settlement agreement’ concerning child custody, visitation and relocation of the children. The trial court was not required to accept the agreement merely because it was presented by the parties and their lawyers. Based upon this record, we do not know if the trial court considered the section 61.13(3) factors at the time the agreement was presented. Since there is no requirement that the court enter written findings, Jones v. Jones, 674 So.2d 770 (Fla. 5th DCA 1996); Murphy v. Murphy, 621 So.2d 455 (Fla. 4th DCA 1993), and since the parties have not requested that the trial court redetermine custody based upon section 61.13(3), I would not require rehearing. Section 61.13(2)(b)2. requires that parental responsibility be shared by both parents unless it is detrimental to the child. Both parents are to be given the same consideration. Id. In this ease, there is no doubt that both parents have an interest in the children and have been active in the fives of their children. Moreover, both parties have presented all the evidence considered by section 61.13(3). An additional hearing to “litigate” custody will not present the trial judge with either new information or a better assessment of the parties.
WHETHER THE TRIAL COURT ERRED IN PROHIBITING THE PRESENCE OF COURT REPORTERS DURING PROCEEDINGS HELD IN CHAMBERS.
I find no basis for the trial court’s having closed the courtroom to the parties or court reporters. Philosophically, Florida is a leader in ensuring that all courts of the state are open to all parties. Article I, section 21 of the Florida Constitution provides:
The courts shall be open to every person for redress "of any injury, and justice shall be administered without sale, denial or delay.
The Florida Supreme Court has authorized cameras in the courtroom, Florida Rule of Judicial Administration 2.170, and has recently developed, along with Florida State University, the “Gavel To Gavel” program which allows the public to hear and see supreme court oral arguments on the internet. In welcoming visitors to the court’s website, Chief Justice Kogan wrote:
More than any other state, Florida is committed to opening its courthouse doors ever voider to the public. Our efforts to improve access now are recognized as an international model studied by nations as far away as Peru and Ireland. Through our partnership with Florida State University, we are proud to offer the citizens of Florida a chance to see the inner workings *1243 of their supreme court in Gavel-to-Gavel live coverage.
(Emphasis added).
At least one district court of appeal has authorized the examination and cross-examination of witnesses via satellite. Harrell v. State, 689 So.2d 400 (Fla. Bd DCA), rev. granted, 699 So.2d 1373 (Fla.1997). To exclude parties who want to view the proceedings and assist their counsel runs counter to the philosophy of the Florida court system where public access, as expressed by the Chief Justice, is paramount to the mission of the court.
There is also a practical reason for encouraging the attendance of court reporters: to ensure an appellate record as required by rule 9.200, Florida Rules of Appellate Practice. Without a record, the court may require that the case be tried again. Ariko v. Nicholson, 632 So.2d 174 (Fla. 5th DCA 1994). Or, a party who fails to provide the appellate court with a transcript of the proceedings may lose because the appellate court must presume the trial court’s findings are correct unless there is an error on the face of the judgment. Hirsch v. Hirsch, 642 So.2d 20 (Fla. 5th DCA 1994). Although we would not reverse on this basis because a statement of the evidence or proceedings was used instead of a transcript, it is preferable, especially when the parties have provided a court reporter, to have a transcript.
Finally, and most important, there is an appearance of impropriety when a court excludes parties and an available court reporter hired by a party who wants the proceedings recorded. Although lawyers for both parties were present, excluding the litigants and conducting a hearing in their absence undermines confidence in the judiciary. Certainly, it does not “promote public confidence in the integrity and impartiality of the judiciary.” Fla.Code Jud. Conduct, Canon 2A; see also Hanson v. Hanson, 678 So.2d 522 (Fla. 5th DCA 1996). Judges should allow parties and court reporters to appear at all sessions of court unless the court seals the proceedings or a statute requires exclusion.
In summary, I would quash the order preventing Mary from moving the children from the state and would remand with instructions that the court enter an order allowing Mary to remove the children and modifying the judgment to protect Rice’s visitation. I would not require a rehearing to address the factors in 61.13(3). Practically speaking in this case, the court has heard evidence from both parents to apply all factors. Finally, I would make it clear that the parties and their court reporters should be allowed to attend all sessions of court.

.The six factors were adopted from the Third District's decision in Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989) (Schwartz, J., specially concurring). rev. denied, 560 So.2d 233 (Fla.1990). The factors are:
1. Whether the move would be likely to improve the general quality of life for both the primary residential spouse and the children.
2. Whether the motive for seeking the move is for the express purpose of defeating visitation.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the noncustodial parent.
5. Whether the cost of transportation is financially affordable by one or both of the parents.
6. Whether the move is in the best interests of the child.

. Effective 1 July 1997, section 61.13, Florida Statutes, was amended to provide:
61.13. Custody and support of children; visitation rights; power of court in making order
*1241 (2)
(d) No presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact and access with the secondary residential parent. In malting a determination as to whether the primary residential parent may relocate with a child, the court must consider the following factors:
1. Whether the move would he likely to improve the general quality of life for both the residential parent and the child.
2. The extent to which visitation rights have been allowed and exercised.
3. Whether the primary residential parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent.
5. Whether the cost of transportation is financially affordable by one or both parties.
6. Whether the move is in the best interests of the child. Ch. 97-242, § 1, Laws of Fla.

. See Note 2, supra.