SALTER, J.
Patricia Edgar (Mother) appeals a final judgment granting her former husband’s (Father’s) motion for contempt and his amended petition to modify their parenting plan and child support obligations. We affirm in part, reverse in part, and remand for further proceedings.
I. Procedural History
The parties were married in 1996. They had four children at the time of their divorce in North Carolina in 2005. Although the North Carolina judgment identified the four children — then ages ten, nine, seven, and four years old — it did not include any provisions regarding custody, parental responsibility, visitation, or child support. So far as the record reflects, there was no parenting plan.
At some point in 2007, the Mother and Father resumed living together with the children in various locations in and near Key West, Florida. The Mother and Father did not remarry. In 2009, the Department of Children and Families (DCF) office in Monroe County sought and obtained protective supervision over all four children. In 2010, finding that the Mother had complied with her case plan, DCF sought (and the circuit court granted) an order terminating protective supervision.
In the latter part of 2010, the Father filed a “supplemental petition to modify parenting plan and other relief’[1] in the Monroe County circuit court, attaching a copy of the 2005 North Carolina “Absolute Divorce Judgment.” The Father’s petition did not ask for any relief regarding the three older children. It alleged that the current parenting plan for the youngest child (then ten years old) was “shared parental responsibility,” that the youngest child wished to stay with the Father in Key West, and that the Mother was engaging in erratic behavior and placing the child in dangerous situations. The petition sought sole parental responsibility of the youngest child for the Father, with limited supervised visitation for the Mother. Finally, the Father’s petition sought a temporary injunction to prevent removal of the youngest child from the jurisdiction, based on a fear that the Mother or others would take the child to North Carolina.
The following day, the Monroe County circuit court entered a form order for a case management conference and prospective referral to the general magistrate. The day after that, November 3, 2010, the Mother filed an emergency motion to enforce her alleged custody of the youngest child and another minor child. The Mother alleged that she had custody of all four children under the final order and case plan in the DCF dependency case, and that the Father was refusing to return two *257 of the children to the Mother after visitation. In a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) Affidavit filed with her emergency motion, the Mother reported that all four children had resided with her since October 1, 2010, at a residence in Kill Devil Hills, North Carolina.
On November 9, 2010, the parties and their attorneys appeared in the circuit court for a hearing on the Mother’s emergency motion to enforce custody. Although it does not appear that a written order was entered, the court minutes prepared by the deputy clerk and made a part of the record state that the trial court declined to change any custody (so that the youngest child would remain with the Father) until the trial court had a chance to speak with the child and to consider a psychological evaluation of the child. At a hearing a week later, the court denied the Mother’s emergency motion for contempt, authorized time-sharing visitation, and ordered that the youngest child “cannot leave State at this time.”[2]
A series of allegations and cross-allegations over visitation details,' with nearly weekly hearings, followed. On November 80, 2010, the Mother filed a “notice of intent to relocate with children,” proposing that the youngest child join the Mother and the other three minor children at their home in North Carolina. The notice included specifics regarding the proposed relocation, pursuant to section 61.13001, Florida Statutes (2010), as well as a detailed parenting plan. The Father filed -written objections and a request for a temporary order “restraining the relocation of the child pending final hearing.” A mediation to resolve all issues impassed, and the court directed the parties to attempt again to mediate, with particular emphasis on visitation and travel during the upcoming December holidays. After yet another emergency hearing, the trial court entered an order on December 17, 2010, authorizing the Mother to have time-sharing in North Carolina with the youngest child from December 20, 2010, through January 2, 2011, with the Father to have daily Skype communication with the children during that time, and authorizing the Father to have time-sharing with the older three children in Key West during their spring break.
Meanwhile, a Key West psychiatrist interviewed the youngest child and both parents, and provided a relocation evaluation report to the court. The psychiatrist reported that: the youngest child wanted to live with her mother and siblings in North Carolina; “it is not recommended to separate siblings at her developmental stage”; the Father, his girlfriend, and the youngest child were then in a one bedroom apartment in Key West, with no plan for what the arrangements might be when the Father’s lease ended; and a mediated settlement allowing relocation of the child to North Carolina, with reasonable visitation terms and abstinence from alcohol on the part of the Mother (with monitoring), would be in the best interest of the child.
In January 2011, there were additional cross-motions for contempt for alleged violations of time-sharing directives. In early February, the trial court appointed an experienced former chief circuit court judge as a special magistrate to interview the youngest child and provide a report to the court. The special magistrate interviewed the child in camera and filed a report and recommendation on February 7, 2011, that the court consider the child’s preference “to live with her mother and be with her *258 siblings in North Carolina” in ruling on the request for relocation. A hearing scheduled before the special magistrate for the afternoon of February 10, 2011, was abruptly taken off the calendar when the Father filed a written objection to the assignment of the special magistrate.
The following day, the Mother filed an emergency motion to set a preliminary hearing on relocation, alleging that the parties had reached a mediated agreement allowing relocation (but the Father had refused to sign it) and that the Mother had been forced to remain in Monroe County while the three older children remained in North Carolina. The Father denied that an agreement had been reached and denied that he was intentionally delaying the proceedings. On February 15, 2011, the Father also filed a motion for the appointment of a guardian ad litem for the youngest child, asserting that her interests “are adverse to those of her mother.” On February 18, 2011, the Mother supplemented her second motion for contempt with allegations that the Father was engaging in “self-help” and was willfully in violation of the time-sharing order. The Key West police were called and returned the youngest child to the Mother.
The significance of the many motions and cross-motions — and this opinion has omitted the scandalous allegations hurled by the parties against each other and by the Mother against the Father’s girlfriend — pales in comparison to what happened next. The Mother fled with the youngest child to North Carolina, a flagrant violation of the Florida court’s order.
At a hearing scheduled for February 22, 2011, the Mother’s counsel moved to withdraw from the case and informed the court that the Mother had taken the youngest child to North Carolina in violation of the court’s prior rulings. The trial court attempted to reach the Mother by telephone, but the Mother did not answer. The court left a message on the Mother’s voicemail that she had twenty-four hours to return the child to Florida or the court would issue a warrant for her arrest. On February 24, 2011, the court granted the Mother’s counsel’s motion to withdraw. Four days later, the court entered an order reporting that the child had not been returned to Florida, finding that the Mother had removed the child with malicious intent to deprive the Father of his right to custody, finding a violation of section 787.08, Florida Statutes (2011),[3] authorizing the issuance of warrants for the arrest of the Mother, and holding her in contempt of court. The same day, the court also entered an order striking the Mother’s petition to relocate, granting the Father’s amended petition to modify the parenting plan, and granting his motion for attorney’s fees.
In North Carolina, the Mother obtained counsel and on February 24, 2011, filed a verified civil complaint against the Father asking the court “to assume jurisdiction to determine custody of [all four] minor children” and superficially disclosing the existence of the pending Monroe County circuit court child custody case initiated by the Father. The North Carolina complaint did not disclose the order in the Monroe County circuit court case prohibiting removal of the youngest child from Florida without prior leave of court. On March 8, 2011, the North Carolina court entered an ex parte order awarding the Mother custody of all four minor children until a hearing on the merits could occur *259 (scheduled for April 13, 2011). The order included a finding that “there appears to be no other proceeding concerning the custody of these children pending in any Court.”
The Monroe County circuit court then set all of the pending matters for hearing and non-jury trial, and on March 29, 2011, entered a four-page final judgment finding that: the Mother did not appear for the trial, nor did any attorney appear on her behalf; the youngest child had been returned to Florida as ordered; it was in the best interest of the youngest child that the Father be granted “sole parental responsibility and exclusive timesharing” with her, “with limited supervised time with [the Mother]”; and the other three minor children were to be returned to Monroe County to reside with the Father. The final judgment also reaffirmed the prior findings regarding the Mother’s contempt, directed the Mother to pay $515 per month in child support to the Father, and assessed the Father’s attorney’s fees and costs against the Mother. This appeal followed.
During the pendency of this appeal, the Mother voluntarily dismissed with prejudice her North Carolina complaint against the Father. In the Florida trial court, the Mother sought visitation or interim custody pending appeal, alleging among other things that the Father had returned all four children to North Carolina to a member of his family. The trial court denied that motion, but the Mother’s motion for review of that order by this Court was granted and the four children were restored to the custody of the Mother in North Carolina pending appeal. In April 2012, the oldest of the four children attained his majority.
II. Analysis
The Mother has raised six issues in this appeal. We consider them in order.
A. UCCJEA
The Mother argues that the North Carolina court properly assumed jurisdiction over the emergency child custody issues in February 2011. We disagree. The 2005 North Carolina dissolution of marriage judgment never addressed child custody. The North Carolina court was not fully advised of the pending Florida proceedings (and the Monroe County circuit court order prohibiting relocation of the children without court approval) when the Mother presented her emergency motion in 2011. North Carolina’s counterpart to section 61.517, Florida Statutes (2011), “Temporary emergency jurisdiction,” conforms to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) in all pertinent respects. Florida was the “state having jurisdiction” for purposes of section 50A-204(d) of the North Carolina General Statutes. Had it been fully apprised, the North Carolina court would no doubt have followed that statute’s UC-CJEA requirement to “immediately communicate with the court of [Florida] to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order.”[4]
Instead, the North Carolina court’s temporary custody order inadvertently abrogated the Florida court’s jurisdiction and existing orders — the very circumstance the UCCJEA was drafted and enacted to prevent. The Mother asserts that the Florida trial court should have followed the same provision in Florida’s UCCJEA statutes by contacting the North Carolina court before *260 entering a judgment of contempt against the Mother, striking her Florida pleadings, and granting sole parental responsibility and exclusive timesharing with the youngest child.
We disagree. The Mother faded to comply with the UCCJEA, violated an unambiguous Florida court order, and obtained “emergency” relief in North Carolina by failing to disclose the complete state of facts. The Florida court correctly determined that it had jurisdiction over the 2010 relocation and child custody claims, and that it retained that jurisdiction despite the “emergency” order improperly obtained by the Mother in 2011 in the North Carolina case. We thus affirm the trial court’s determination that it had jurisdiction over the Father’s petition for sole parental responsibility over the youngest child.
B. Modification
The Mother argues that the Florida court abused its discretion by modifying parental responsibility and establishing a parenting plan without addressing the requirements set forth in section 61.13, Florida Statutes (2011). It is undisputed in this case that: the children had lived their entire lives with the Mother, with visitation with the Father; the Department of Children and Families (DCF) approved sole parental responsibility for the Mother, as DCF found compliance with the Mother’s parenting plan and terminated supervision; a former chief circuit court judge serving as special magistrate recommended that the court consider the preferences of the youngest child, that “she loves her father but wants to live with her mother and be with her siblings in North Carolina;” and the Father later returned the children to North Carolina, albeit to the home of a relative other than the Mother, after the Florida court had granted the Father sole parental responsibility and denied relocation.
Section 61.13001(8)(e), Florida Statutes, expressly provides that a parent’s relocation of a minor child without complying with the statute “may be taken into account” by the court in considering a petition for modification or relocation. But in this case, it seems clear that the trial court’s ruling on modification and on the parenting plan were based on the Mother’s contumacious removal of the children to North Carolina rather than on an evidence-based assessment of the twenty “best interests of the child” factors enumerated in section 61.13(a)-(t). Here, as in Landingham v. Landingham, 685 So.2d 946 (Fla. 1st DCA 1996), “vindication of the trial court’s authority is subordinate to the child’s welfare.” Id. at 950 (reversing a change of custody after custodial mother moved from Florida to Colorado with the child in violation of an injunction).
Punishment of the Mother for violation of a court order may affect, but does not conclude, the inquiry regarding the trial court’s assessment of the “best interests of the child” for purposes of sections 61.13 and 61.13001. The final judgment also lacks evidentiary findings regarding the other requirement for a modification, that “a substantial change of circumstances occurred since entry of the previous custody order that was not reasonably contemplated when the previous order was entered.” Clark v. Clark, 35 So.3d 989, 991 (Fla. 5th DCA 2010).
The Mother’s argument on this point is well taken. The final judgment modifying the prior order on parental responsibility, visitation, and timesharing is reversed and remanded for further proceedings.
C., D. Contempt and Section 787.03, Florida Statutes
As noted, the Mother knowingly violated the Florida court’s November 19, 2010, *261 order that she was not to remove the youngest child from Monroe County. The Mother’s claim that she was not afforded due process (before the court ruled on the motion for contempt) is not persuasive.
The Mother has not yet been convicted of a violation of section 787.03, Florida Statutes (2011), “Interference with custody,” at least upon the record before us. The final judgment under review found that a knowing violation occurred and directed the issuance of an arrest warrant and bodily attachment against the Mother, but apparently she has not actually been arrested or brought to trial. For the sake of the children[5] and the remand proceedings, the trial court and the parties may need to address that criminal charge as a precursor to considering interstate visitation terms and final resolution of the relocation and modification issues in the civil case. On remand, the trial court will also be able to consider the recent evidence regarding the Father’s relocation of the children from Florida to North Carolina.
E. The Stricken Pleadings
The Mother’s Florida counsel sought and obtained permission to withdraw after learning of the Mother’s violation of the order precluding removal of the youngest child from Monroe County. The hearing on the Father’s motion to strike the Mother’s pleadings was held in her absence and, she claims, without prior notice to her. The Father has included in the supplemental record a notice indicating that notice of the hearing was mailed to her, but she had no opportunity to retain new counsel or present evidence before the trial court ruled.
On remand, should the Mother elect to continue the prosecution of her relocation petition, the Mother will have an opportunity to file responsive pleadings alleging the unusual and significant circumstances that have occurred since the modification case began. Section 61.13001(3)(e)l provides that the Mother’s relocation of the youngest child in violation of the Florida court’s order may be considered as “a factor” in determining the Mother’s petition, but not the only factor.
F. Child Support Arrearages and Attorney’s Fees
The final judgment awarded the Father child support and terminated his existing child support obligation (including an arrearage of approximately $10,000). The arrearage was vested and not subject to termination or retroactive modification. Kranz v. Kranz, 661 So.2d 876, 877 (Fla. 3d DCA 1995). We reverse that portion of the final judgment.
The award of attorney’s fees and costs to the Father may have been warranted in part as a sanction, but the findings of fact and record are insufficient to sustain the award. There was no proof regarding the Father’s need and the Mother’s ability to pay. We therefore reverse the final judgment on this point as well.
III. Conclusion
The Mother invited swift and firm judicial action when she violated the Florida court’s order in the relocation case and simply took the youngest child to North Carolina. Nevertheless, the guiding principle in the aftermath must continue to be the best interests of the children, a statutory mandate. We affirm those provisions of the final judgment sanctioning the Mother for her precipitous actions, but we reverse the final judgment insofar as it: (a) summarily granted sole parental re *262 sponsibility of, and exclusive timesharing with, the youngest child, to the Father (with limited and supervised time with the Mother); (b) determined that Florida, rather than North Carolina, is the appropriate and best residential setting for the minor children; (c) terminated the prior child support order and arrearage payable to the Mother; and (d) entered a new child support obligation payable to the Father and awarded attorney’s fees and costs to the Father, in each case without determining his need and the Mother’s ability to pay. We remand this difficult case, in which the children have been shuttled between the two states several times, to the trial court for further proceedings.
Affirmed in part, reversed in part, and remanded.

. As noted, however, there was no written or court-ordered parenting plan in a dissolution judgment then in effect that could be modified.

. A written order was entered to this effect on November 16, 2010. The order also directed the Father to arrange a visit between the youngest child and a child psychologist.

. The statute provides generally that interference with a parent or guardian’s lawful custody of a minor child is a third-degree felony.

. Ultimately the North Carolina and Florida judges did confer regarding jurisdiction. The Mother dismissed the North Carolina case before any further rulings by that court.

. It should be noted that the oldest of the four children turned eighteen in April 2012, such that only three children remain subject to the Florida case and the parenting plan.